MARSH v. NICHOLS, SHEPARD AND COMPANY.

NICHOLS, SHEPARD AND COMPANY v. MARSH.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF MICHIGAN.

Nos. 72, 95.   Argued November 9, 1888. — Decided December 10,.1888.

Letters-patent for an invention, issued without the signature of the Secretary of the Interior, have no validity, although in every other respect
the requirements of law may be complied with, and although the issue
without the Secretary's signature was unintentional, accidental and unknown to the Department of the Interior or to the. patentee; but this
omission may be supplied by the Secretary or Acting Secretary of the
Interior at the time when the correction is made, and from that time forward the letters operate as a patent for the invention claimed.

An accounting for profits in a suit in equity to restrain an infringement of
letters-patent can only be had when the infringement complained of took
place before the suit was commenced and continued afterwards.

The act of February 3, 1887, c. 93, "for the relief of Elon A. Marsh and
Minard Lefever," 24 Stat. 378, has no retroactive effect.

THE case, as stated by the court, was as follows:

This is a suit in equity for the infringement of an alleged
patent of the United States, which, it is averred, was obtained
by the complainant Marsh and his assignee and co-complainant,
Lefever, for a new and useful improvement in steam-engine
valve-gear, with a prayer that the defendant corporation may
be required to account for and pay over to the complainants
the profits acquired by it and damages sustained by them by
its unlawful acts, and be enjoined from further infringement.
The bill sets forth that the alleged patent was obtained on the
28th day of December, 1880, and was in due form of law,
under the seal of the Patent Office of the United States,
signed by the Secretary of the Interior, countersigned by the
Commissioner of Patents, and dated on that day and year.
The answer of the defendant to these allegations is, that it
knows nothing of the issue of the patent, except as informed

by the bill or. by hearsay, and, therefore, neither admits nor denies them, but leaves the complainants to make such proofs thereof as they may deem advisable. A replication having been filed to the answer, proofs were taken, among which there was put in evidence an instrument in the form of a patent of the United States, purporting to be signed "A. Bell, Acting Secretary of the Interior," and countersigned. and sealed as alleged in the bill. By stipulation of the parties certain facts were admitted with reference to this instrument and allowed to be considered, "so far as relevant, competent or material, on any motion or at any stage of the cause, including final hearing." The facts thus admitted were substantially these: That the instrument was received from the Patent Office by the complainants Marsh and Lefever (the parties named therein as patentees) on or about January 2, 1881, in all respects in the same condition as it now is, save that the words "A. Bell" were not thereon where they now appear; that the signature to it of E. M. Marble, Commissioner of Patents and the seal of the Patent Office are genuine; that neither of the complainants nor their counsel knew of the omission of the signature of the Secretary of the Interior to the instrument, but supposed it was in all respects regular, their attention never having been called to the same until on or about February 12, 1882, long after the commencement of the present suit; that on or about February 17 following, it was sent by the solicitor of the complainants to the Patent Office at Washington, accompanied by a request of the complainants Marsh and Lefever to have the mistake corrected; and that on or about February 24 it was returned to the solicitor signed "A. Bell, Acting Secretary of the Interior," but without any other change.

A letter dated April 28, 1882, from E. M. Marble, who was the Commissioner of Patents when the instrument was issued, was also admitted in evidence. The letter set forth the various steps taken by Marsh and Lefever to obtain. a patent for the invention claimed, and by the officers of the Patent Office in preparing, executing and delivering it to them; and shows that every requirement of the law and of the regulations of

the Patent Office was complied with when the instrument was issued, except the affixing to it of the signature of the Acting Secretary of the Interior, and that its omission, as established by the history and record of the case, was purely accidental, and probably was caused by the instrument being inadvertently laid aside or withdrawn from before the Acting Secretary while he was engaged in signing patents.

The Circuit Court held that the signature of the Secretary of the Interior was essential to render the instrument operative as a patent of the United States for the invention claimed; that until thus signed it was not only a defective instrument, but was entirely void; and therefore that the suit could not be maintained; and it dismissed the bill. Its decree was entered on the 16th of April, 1883, and from it the complainants on the 26th of February, 1885, took an appeal to this court. Subsequently, and on the 3d of February, 1887, Congress passed an act for the relief of the patentees, reciting in its preamble the issue to them on the 28th of December, 1880, of the letters-patent mentioned in due form of procedure, except that by accident or mistake they were not signed by the Secretary of the Interior and that they were signed by the then Acting Secretary on February 24, 1882, and declaring as follows:

"That the letters-patent named in the preamble of this act are hereby and by this act made legal, valid, complete and operative, in law and equity, from the twenty-eighth day of December, eighteen hundred and eighty, to the same extent and for the same term that the same would have been legal, valid, complete and operative if the signature of the Secretary of the Interior had, at the time of the supposed issue of 'said letters-patent on the day aforesaid, been placed thereon, and the omission of said signature thereon had not occurred: *Provided, however,* That the provisions of this act shall not be held or construed to apply to or affect any suits now pending, nor any cause of action arising prior to its passage." 24 Stat. 378, c. 93.

*Mr. R. A. Parker* for Marsh and Lefever.

I. Defendant could not impeach complainants' patent, "Exhibit A," for the supposed irregularity in its signing and issue, it not being apparent on its face thereof, without pleading such defence. *Railway Register Manuf'g. Co.* v. *North Hudson Railroad*, 23 Fed. Rep. 593; *Moorehead* v. *Jones*, 3 Wall. Jr. C. C. 306.

II. The patent in question being regular on its face, no evidence is competent to show that the signatures, seal or attestation of the issuing thereof was irregular, or to contradict the facts stated on its face, whether they were pleaded or not. 1 Greenlf. Ev. 275 n.; *Ross* v. *McLung*, 6 Pet. 283; *Kavanaugh* v. *Day*, 10 R. I. 393; *Jamieson* v. *Jamieson*, 3 Whart. 457; *Stringer* v. *Young*, 3 Pet. 319, 341; *Doughty* v. *West*, 6 Blatchford, 429; *Philadelphia & Trenton Railroad* v. *Stimpson*, 14 Pet. 448; *Eureka Co.* v. *Bailey Co.*, 11 Wall. 488; *Rubber Co.* v. *Goodyear*, 9 Wall. 788; *Giant Powder Co.* v. *Safety Nitro-Powder Co.*, 19 Fed. Rep. 509.

III. If the regularity of issue of said patent is open to attack in this cause by the evidence produced, I respectfully submit that such facts do not constitute an impeachment of its validity, or of the date when the protection to the inventor began and ends. In other words, the signing by the Assistant Secretary of the Interior, in its legal effect, was neither irregular nor invalid. *United States* v. *Schurz*, 102 U. S. 378; *Woodworth* v. *Hall*, 1 Woodb. & Min. 389; *Butterworth* v. *Hoe*, 112 U. S. 50; *Grant* v. *Raymond*, 6 Pet. 218, 231; *Evans* v. *Jordan*, 1 Brock. 252; *Bell* v. *Hearne*, 19 How. 252; *N. W. Fire Extinguisher Co.* v. *Phila. Fire Extinguisher Co.*, 6 Off. Gaz. 34; *Wilson* v. *Rousseau*, 4 How. 646; *New York & Maryland Railroad* v. *Winans*, 17 How. 30; *Groner* v. *Smith*, 49 Missouri, 318; *Shumate* v. *Reavis*, 49 Missouri, 333; *Winston* v. *Affalter*, 49 Missouri, 263; *McGarrahan* v. *Mining Co.*, 96 U. S. 316; *Bissell* v. *Spring Valley Township*, 110 U. S. 169; *Weyauwega* v. *Ayling*, 99 U. S. 112.

IV. If the complainants' patent only became valid at the date of its signing by the Secretary of the Interior, February 24th, 1882, then we respectfully submit that the decree was erroneous, and that complainants were entitled to an injunc-

tion of final hearing, and an accounting from the date when said patent became valid. *Woodworth* v. *Stone*, 3 Story, 749; *Reedy* v. *Scott*, 23 Wall. 352; *Sarven* v. *Hall*, 5 Fish. Pat. Cas. 415; *Butler* v. *Ball*, 38 Off. Gaz. 420; *Jones* v. *Sewall*, 6 Fish. Pat. Cas. 343.

V. But if it should be found that the validity of the patent in question must depend solely upon the curative effect of the act of Congress already quoted, then we respectfully submit that such act, Congress having the power, makes this patent valid from its original date, December 28th, 1880, and cures all the irregularities; and this without regard to the proviso annexed thereto, the same being invalid; and that therefore such act must govern this court in its decision in this action. *Blanchard* v. *Sprague*, 2 Story, 164, 170; *Evans* v. *Eaton*, 3 Wheat. 454; *Tilghman* v. *Proctor*, 102 U. S. 707; *Jones* v. *Sewall*, 6 Fish. Pat. Cas. 343; *Watson* v. *Mercer*, 8 Pet. 88; *Yeaton* v. *United States*, 5 Cranch, 281; *Randall* v. *Kreiger*, 23 Wall. 137, 148; *State* v. *Norwood*, 12 Maryland, 195; *Cammeyer* v. *Newton*, 94 U. S. 225; *Calder* v. *Bull*, 3 Dall. 386.

*Mr. Charles F. Burton* for Nichols, Shepard and Company.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

In support of their appeal the appellants contend in substance as follows:

1st. That the defendant could not impeach the patent for the irregularity in its signing and issue, this not being apparent on its face, without pleading such defence and regularly putting the question in issue;

2d. That the patent being regular on its face, evidence to show that the signature was irregularly placed to it was incompetent;

3d. That the correction of the omission in the patent was within the power of the Acting Secretary of the Interior at the time; that when the omission was thus remedied the patent was operative from its original date, or, at least, from

the date of the correction, February 24, 1882; and that the complainants were, even in this latter view, entitled to an accounting from that date;

4th. That if the patent did not become valid from its date on the subsequent signature by the Acting Secretary of the Interior, then the act of Congress of February 3, 1887, cured all irregularities in the signing of the patent, made it valid from its date, and must govern the decision in this court.

The first three positions may be considered together.

It is undoubtedly true, as a general rule, that a patent of the United States, whether for land or for an invention, can be attacked for defects, not apparent on its face, only by regular proceedings instituted for that purpose, and is not open to collateral attack, except where specially provided by statute. *Eureka Co.* v. *Bailey Co.*, 11 Wall. 488, 492. But this rule applies only to those cases where the patent has been in fact executed, and the authority of the officers to issue the same was complete. In such cases the impeachment must be by pleadings setting up the specific acts which, it is alleged, vitiate and defeat the instrument. It is always open to show that an instrument produced in evidence, whether in an action at law or in a suit in equity in support of a claim or defence, was never executed by the person whose signature it bears, but that it is a simulated and forged document. And when the time of execution is material to the enforcement of the instrument, it is competent to show the date when the signature of the party was attached. Antedating cannot be used to cut off existing rights or defences of third parties which would not be impaired or defeated if the true date was given. With respect to patents for land we have had frequent occasion to assert their inviolability against collateral attack, where the Land Department had jurisdiction, and the land formed part of the public domain, and the law provided for their sale. But we have also held that if the land patented was never the property of the United States, or had been previously sold, or reserved for sale, or the officers had no authority to execute the instrument, the fact could be shown in any action or proceeding whenever the patent is offered

in evidence. *Smelting Co.* v. *Kemp*, 104 U. S. 636, 641; *Steel* v. *Smelting Co.*, 106 U. S. 447, 452, 453; *Mahn* v. *Harwood*, 112 U. S. 354, 358. And so also may the fact be shown, if the instrument itself was never signed by the officers whose names are attached to it, or when they were in office, or at the time stated. As was said in a case lately before this court, antedating by an agent after his power has been revoked, so as to bind his principal, "partakes of the character of forgery, and is always open to inquiry, no matter who relies upon it." *Anthony* v. *Jasper County*, 101 U. S. 693, 699. The same doctrine applies when a patent is signed by an officer of the Patent Office, or Land Department, after he has gone out of office. His power to give effect to his acts as an officer of the government is then at an end, and no efficacy can be imparted by antedating them, even though the act be the correction of a mere mistake or omission. The mistake or omission must stand in the condition he left it so far as he is concerned, with all its consequences. If corrected at all, it must be by officers in power at the time of the correction, who have succeeded to his authority.

This doctrine has special force in its application to a patent for an invention. A patent for land has, in the legislation of Congress, a twofold operation. It conveys the title where previously that remained in the United States; but where issued upon the recognition and confirmation of a claim to a previously existing title, it is evidence of record of the existence of that title, or of equities respecting the land requiring recognition by a quit-claim from the government. It always imports that the government conveys, or has previously conveyed, interests in the lands, something which it at the time owns, or its predecessor once owned. And, by the proceedings previous to its issue, there is created in the claimant an equitable right to the conveyance of the legal title, or his right to such title is so established that he can enforce it against others who, with notice of his claims, may have obtained the patent. *Langdeau* v. *Hanes*, 21 Wall. 521, 529. But the patent for an invention conveys nothing which the government owns or its predecessors ever owned. The

invention is the product of the inventor's brain, and if made known would be subject to the use of any one, if that use were not secured to him. Such security is afforded by the act of Congress when his priority of invention is established before the officers of the Patent Office, and the patent is issued. The patent is the evidence of his exclusive right to the use of the invention; it therefore may be said to create a property interest in that invention. Until the patent is issued there is no property right in it, that is, no such right as the inventor can enforce. Until then there is no power over its use, which is one of the elements of a right of property in anything capable of ownership. In *Gayler* v. *Wilder*, 10 How. 477, 493, this subject was to some extent considered, when the court, by Chief Justice Taney, said: ".The inventor of a new and useful improvement certainly has no exclusive right to it until he obtains a patent. This right is created by the patent, and no suit can be maintained by the inventor against any one for using it before the patent is issued.". And again: "The monopoly did not exist at common law, and the rights, therefore, which may be exercised under it cannot be regulated by the rules of the common law. It is created by the act of Congress, and no rights can be acquired in it unless authorized by statute, and in the manner the statute prescribes."

Section 4883 of the Revised Statutes prescribes the manner in which patents for inventions shall be attested. It declares that "all patents shall be issued in the name of the United States of America, under the seal of the Patent Office, and shall be signed by the Secretary of the Interior and countersigned by the Commissioner of Patents, and they shall be recorded, together with the specifications, in the Patent Office in books to be kept for that purpose." The signatures of all the officers here named must be attached to the instrument, or it will be an uncompleted document, and therefore ineffectual to confer "the exclusive right to make, use and vend the invention or discovery throughout the United States and the Territories thereof." The omission of one signature is no more permissible than the omission of all. On this point we have a pertinent adjudication in *McGarrahan* v. *Mining*

*Company*, 96 U. S. 316, 321. There the question arose as·to the validity of an instrument as a patent·for· land of the United States, which had not been countersigned by the Recorder of the ·General Land Office. The law then in force respecting patents for land issued by the General Land Office provided that they should be issued in the name of the United States under the seal of said office, and be signed by the President of the United States, or by a secretary appointed by him for · that purpose, and countersigned by the Recorder of the General Land Office, and be recorded in said office in books to be kept for that purpose; and the court held that the fact the instrument was not countersigned by the Recorder of the General Land Office was fatal to its validity, and that the in-' strument did not become operative as a patent until it was̖ attested by all the parties named in the statute. Until then the United States had not executed a patent for a grant of lands. . In deciding the case the court, by Mr. Chief Justice Waite, said : " Each and every one of the integral parts of the execution is essential to the perfection of the patent. They are.of equal importance under the law, and one cannot be dispensed with more than another. Neither is directory, but all are mandatory. The question is not what, in the absence of statutory regulations, would constitute a valid grant, but what the statute requires. Not what other statutes may prescribe, but what this does. Neither the signing nor the sealing nor the countersigning can be omitted, any more than the signing or the sealing or the acknowledgment by a grantor, or the attestation by witnesses, when, by statute, such forms are prescribed for·the due execution of deeds by private parties for the conveyance of lands. It has never been doubted that in such cases the omission of any of the statutory requirements invalidates the deed. The legal title to lands cannot be conveyed except in the form provided by law."

This decision· is as applicable to a patent·for an invention as it is to a patent for lands, ·and· in accordance with it the instrument issued to the complainants Marsh and Lefever for the invention they ·claim was not, at the time it was issued, by reason of the absence of the signature of the Secretary ·of the

Interior, operative to create any right in them. But though the instrument was thus inoperative, they were not barred from afterwards obtaining a correction of it so as to render it effective as a patent, to which they had become entitled. Where mistakes are committed by officers of the Land Department in issuing evidence of a claimant's rights, not amounting to errors of judgment in the exercise of judicial discretion, but which are the result of accident or inadvertence, they may be remedied upon proper application to the Department. We have an instance of such action in the case of *Bell* v. *Hearne*, 19 How. 252, 262. It there appeared that a patent for land was issued to one James Bell, whilst the records of the office showed that one John Bell was the applicant, and the party entitled to it. Some years after it was received by James Bell, he returned it to the General Land Office, and upon an examination of the records of the Department, and being satisfied therefrom of the original mistake in the designation of the first name of the party entitled to the patent, the Commissioner of the General Land Office cancelled the original patent and issued a new one to John Bell; and the question before the court was as to the power of the Commissioner to receive the original patent and to issue a new one, upon which question the court said: "The Commissioner of the General Land Office exercises a general superintendence over the subordinate officers of his department, and is clothed with liberal powers of control, to be exercised for the purposes of justice, and to prevent the consequences of inadvertence, irregularity, mistake and fraud in the important and extensive operations of that officer for the disposal of the public domain. The power exercised in this case is a power to correct a clerical mistake, the existence of which is shown plainly by the record, and is a necessary power in the administration of every department."

It is true the omission of the signature of the Acting Secretary of the Interior to the instrument issued to the complainants Marsh and Lefever was not a mere clerical error, but an omission of a signature essential to the creation of the instrument as a patent, being in that respect like the omission of a

grantor's name to a deed. A clerical error, as its designation imports, is an error of a clerk or a subordinate officer in transcribing or entering an official proceeding ordered by another. But we have no doubt that the power of the department to prevent the consequences of inadvertences and mistakes in its officers extends so far as to remedy an omission like the one under consideration. The manner of affording the remedy is the only question in such cases. Clearly, it must be by the action of existing officers of the department, not by former officers, who have gone out of office. Mr. Schurz, who was Secretary of the Interior when the instrument in question was issued, could not have supplied the omission by signing the document when it was returned to the Department for that purpose in February, 1882, for he was then no longer in office. Mr. Kirkwood had succeeded him as Secretary, and was then in office. He could undoubtedly have taken up the application of the complainants Marsh and Lefever, and having found upon examination that they were entitled, by proceedings and proofs already had in the department, to the patent, have signed the instrument and delivered it to them in a perfected form. This official duty, however, appears to have been performed by Mr. Bell, who was Acting Secretary under him, as he had been under Secretary Schurz. The omission in the instrument as originally issued was thus supplied. The Revised Statutes (§ 177) provide that in the case of the death, resignation, absence, or sickness of the head of any department, the first or sole assistant thereof shall, except in certain cases referred to, (not material here,) perform the duties of such head until a successor is appointed or such absence or sickness shall cease. The signing of the instrument by Mr. Bell as Acting Secretary implies that one of the conditions on which he was authorized to act in that capacity had arisen. With his signature added the instrument was complete. No other signature was required, the same person who signed it as Commissioner of Patents still continuing in office. The only embarrassment from completing the instrument in this way arises from its date. The signature, which completed its execution, was attached February 24, 1882, whilst its date is December 28,

1880, more than thirteen months before. The statute declares that " every patent shall bear date as of a day not later than six months from the time at which it was passed and allowed and notice thereof was sent to the applicant or his agent." Rev. Stat. § 4885. This provision was intended to prescribe the date on which the patent would begin to run; but should any question arise in the future as to the duration of this patent, the time at which its execution was completed by the signature of the Acting Secretary may be proved. It would have been well if the date of the signing had been added to his signature, or in some way indicated on the instrument itself, so that it might have gone upon the records of the Patent Office; as from that time only could the instrument operate as a patent for the invention claimed, unless greater efficacy was imparted to it by the act of Congress, which we shall presently consider.

The position that an accounting for profits earned subsequently could be claimed in this suit is not tenable. An accounting for such profits after suit can be demanded only where the infringement complained of took place previously and continued afterwards.

As to the act of Congress passed February 3, 1887, for the relief of the appellants, only a few words need be said. It may be conceded that the defect arising from the omission of the Secretary's signature to the instrument is cured as to the future by that act, but it contains a proviso which excepts its provisions from applying to or affecting any suits then pending, or any cause of action arising prior to its passage. It is evident that Congress did not intend to give to the act any retroactive effect, and to prevent such a construction inserted the proviso, thus limiting the extent of its operation. *Wayman* v. *Southard*, 10 Wheat. 1, 30. As thus limited, the act, as well observed by counsel, is in harmony with the law relating to reissues, allowing the inventor upon the surrender of his patent with a defective specification to have a new patent for the remainder of his term.

For the reasons expressed it follows that

*The decree below must be affirmed; and the cross appeal, being from rulings in the exclusion of evidence offered with respect to the alleged infringement, must be dismissed.*