WESTERVELT ET AL. v. THE NATIONAL PAPER AND
SUPPLY COMPANY.

[No. 18,297.   Filed May 29, 1900.]

MASTER AND SERVANT.—*Trade Secrets.*—*Injunction.*—Where a company engaged in the manufacture of paper bags employed a person to work in its factory who had partially completed a paper bag machine, with the understanding that the employe should complete the machine at the expense of the company, and that the machine when completed should belong to the company as a trade secret, an action may be maintained by the company to enjoin the employe and others assisting him from manufacturing the machine for the use of others.   *pp. 673-678.*

SAME.—*Trade Secret.*—*Injunction.*—Where one employs another to work for him in a business in which he makes use of a secret process, or of machinery invented by himself, or by others for him, the nature and particulars of which he desires to keep a secret, of which desire the employe has notice,. the law will imply a promise to keep the employer's secret, and any attempt on the part of the employe to use the secret process or machinery, or communicate the secret to others, will be enjoined by a court of equity.   *pp. 678, 679.*

APPEAL AND ERROR.—*Evidence.*—*When Not All In Record.*—*Drawings.*—Where in the trial of a cause the witnesses in describing a machine did so with reference to drawings thereof which were before the court, and such drawings are not made a part of the record on appeal the evidence cannot be reviewed.   *p. 681.*

From the Elkhart Circuit Court.   *Affirmed.*

*Andrew Anderson*, for appellants.

*J. M. VanFleet* and *V. W. VanFleet*, for appellee.

MONKS, J.—Appellee procured a judgment in the court below enjoining appellants from divulging or using a trade secret.

The assignment of errors calls in question the action of the court in overruling appellants' demurrer to the complaint and in overruling appellants' motion for a new trial.

It is alleged in the complaint, in substance, that appellee was engaged in the business of manufacturing paper bags, and appellant, Taggart, then had some skill and experience

in the manufacture of paper bags, and had a machine partially completed for the purpose of aiding in the manufacture of such bags; that, in consideration of this skill and experience and of the ideas he professed to have, and of the fact that he had said incomplete machine, appellee, in August, 1895, entered into a contract with him to work in its factory, in the manufacture of paper bags, for $12 per week; that he was to furnish his services and his incomplete machine, known as a tubing machine, which machine appellee was to furnish the means to complete. It was the understanding and agreement between appellee and said Taggart that his ideas and inventions and discoveries concerning said proposed machine should belong to appellee, and it was not contemplated by either party that a patent should be taken out upon anything which he might invent or discover, but that it should be kept a secret. At the time said contract was made both parties well knew that there was no certainty that said Taggart would be able to construct a practical machine, and that he was to experiment in that direction at the cost of appellee, and appellee should furnish all things and help necessary to carry on said experiments. It was a part of said contract with said Taggart that he should make a complete machine for appellee, and for no other person, and both parties understood by that language that no machine embodying the ideas which said Taggart expected to put into practical form should be made by him for any other person, and his perfected ideas should not be divulged to any other person. At the time Taggart was so employed by appellee he had no means of his own to obtain things with which to experiment, nor could he spare the time to make experiments, and he well knew that the object of appellee was to obtain a machine which would compete with those having similar machines and to undersell those who could not obtain as good machines as those it hoped said Taggart would invent. Both parties well knew that the latter object could not be accomplished unless the ideas said Taggart might use in con-

structing said machine should be kept a secret, and not divulged. At the time said contract was made, tubing machines for the purpose of aiding in the manufacture of paper bags were not new. There were also machines in existence which would so fold and paste one end of a paper tube as to form a complete paper bag, and the construction of these latter machines was a secret not generally known to those engaged in the manufacture of paper bags, and not known to appellee, and those owning such machines kept their construction a secret. In the manufacture of paper bags there are necessarily two processes, namely, (1) the process of folding and pressing a continuous sheet of paper into the form of a tube or cylinder, and cutting it into suitable lengths for bags; (2) the process of folding and pasting one end of said lengths together, thus forming a complete bag. Appellant, Taggart, at the time of his employment, claimed to have ideas from which he could construct a machine that would so fold and paste one end of a paper tube as to form a paper bag, and the hope which appellee had that he would be able to carry his alleged ideas into practical operation induced appellee to employ said Taggart, as he at the time well knew. That the manual labor which it was contemplated by both parties that Taggart should perform, and which he did afterwards perform, was worth no more than $6 per week, as both parties knew when the contract was made, and the extra $6 per week was agreed to be paid by appellee and to be received by appellant on account of his alleged ideas, and the hope that they could be carried into practical operation for the benefit of appellee. In accordance with said contract, said Taggart, in August, 1895, entered into the employment of appellee at its factory in Elkhart, and begun to put his ideas into practical form, and shortly afterwards appellee, at the request of said Taggart, secured the service of appellant Lahr, a skillful draftsman, who put the ideas of said Taggart on paper, in the form of draftings and "blue prints", which then became, and still are, the property of appellee;

and, at the request of said Taggart, appellee employed the appellant Huston, a skillful pattern-maker, who made complete and accurate wooden patterns in accordance with said draftings and "blue prints", which patterns became, and are, the property of appellee. In order to put said ideas of Taggart into practical operation, it was necessary to employ some one to make a machine in accordance with said draftings and "blue prints" and wooden patterns, and appellee employed the appellant, the Buescher Manufacturing Company, to make a machine in accordance therewith, which said company proceeded to do, for which service appellee paid said company more than $500, which completed machine became, and still is, the property of appellee, and there are no other machines like it. By means of said last mentioned machine, appellee was, and is, able to manufacture paper bags cheaper than theretofore, and without such machine appellee could not sell its paper bags on the general market, on account of the extra cost of closing the bottom of the tube by hand. Appellee is now selling more than 50,000 pounds of bags per month, and the same vary in size and weight. The number of bags of all sizes sold per month is at least half a million. On December 28, 1896, appellee agreed to pay said Taggart $15 per week until April 15, 1897, from which time appellee was to pay him $18 per week, and, as a part of said contract, appellee purchased of said Taggart said tubing machine for $75, to be paid October 12, 1897. On January 9, 1897, said Taggart entered into a contract with appellants, Westervelt & Westervelt, to enter their service for three years, and to build for them machines which would be duplicates of appellee's complete machines. Said Westervelts, at the time they made said contract with Taggart, knew the nature of the contract with appellee, and knew that the construction of said machine was a secret for which appellee had paid said Taggart, and that he had no right to divulge it. After said contract was made with Taggart by the Westervelts, they entered into a contract with the appellant, the Buescher

Manufacturing Company, to manufacture a duplicate of appellee's said machine, and said Buescher Manufacturing Company and its officers well knew, at the time said last mentioned contract was made, that it was in violation of the rights of appellee, and said company and its officers each knew that said machine could not be constructed unless said Taggart would divulge the secret of its construction, which belonged to appellee. In order to carry out the scheme to defraud appellee out of its trade secret, the said Buescher Manufacturing Company has employed the appellant, Huston, to duplicate the patterns of appellee's complete machine, and the Westervelts have employed the appellant, Lahr, to duplicate appellee's draftings and "blue prints" of its complete machines, and he is now working on the same at the home of said Taggart. Said Lahr well knows that the secrets contained in said draftings and "blue prints" belong to appellee, and that he cannot lawfully divulge them, nor aid in making a duplicate of appellee's said machines. Appellee's business is a lucrative and profitable one, and if its said trade secret is divulged it will suffer great and irreparable damage, and no one except said Taggart knows, or can divulge said secret, and he is wholly insolvent, and has no property subject to execution. All of said appellants well knowing appellee's rights in the premises, and that the construction of said machine was a secret which belonged to appellee, entered into a conspiracy to defraud appellee out of his trade secret for their own gain, etc.

It is settled by the great weight of the authorities that when one invents or discovers, or procures another to invent and discover for him and keep secret a process of manufacture, whether a proper subject for a patent or not, while he has not an exclusive right against the public, or against those who in good faith acquire a knowledge of it, yet he has such a property in it as a court of chancery will protect against one who, in violation of a contract, express or im-

plied, or a breach of confidence, undertakes to apply it to his own use, or to disclose it to third persons. *O. & W. Thum Co.* v. *Tloczynski*, 114 Mich. 149, 72 N. W. 140, 38 L. R. A. 200, and authorities cited; *Salomon* v. *Hertz*, 40 N. J. Eq. 400, 2 Atl. 379; *Peabody* v. *Norfolk*, 98 Mass. 452, 96 Am. Dec. 664; *Tabor* v. *Hoffman*, 118 N. Y. 30, 23 N. E. 12; *Eastman, etc., Co.* v. *Reichenbach*, 79 Hun 183, 29 N. Y. Supp. 1143; *Little* v. *Gallus*, 4 App. Div. 569, 38 N. Y. Supp. 487; *Morrison* v. *Moat*, 21 L. J. (N. S.) Eq. 248; Story's Eq. Jur., §952; High·on Inj. (2nd ed.), §§19, 84, 1108; Beach on Inj., §§35, 924, 925.

In *Morrison* v. *Moat, supra,* the court said: "There is no doubt whatever that when a party who has a secret in a trade employs persons under a contract, express or implied, or under duty express or implied, those persons cannot gain the knowledge of that secret and then set it up against the employer."

In *Little* v. *Gallus, supra,* the court said: "The law raises an implied contract that an employe who occupies a confidential relation towards his employer will not divulge any trade secrets imparted to him, or discovered by him in the course of his employment." Not only the owner of such trade secret, but also his grantees are entitled to such protection. *Tode* v. *Gross*, 127 N. Y. 480, 28 N. E. 469, 13 L. R. A. 652 and note; *Fowle* v. *Park*, 131 U. S. 88, 9 Sup. Ct. 658, 33 L. ed. 67. Not only the person so acquiring such knowledge will be enjoined, but also all persons to whom he has disclosed such trade secret. 2 High on Inj., §984; *Morrison* v. *Moat*, 9 Hare, 241.

It is evident from the authorities cited that if a person employs another to work for him in a business in which he makes use of a secret process, or of machinery invented by himself, or by others for him, but the nature and particulars of which he desires to keep a secret, and of which desire on the part of the employer the employe has notice at the time of his employment, even if there is no express

contract on the part of the employe not to divulge said secret process or machinery, the law will imply a promise to keep the employer's secret thus entrusted to him; and any attempt on his part to use the secret process or machinery, or to construct the machinery for his own use as against the master, or to communicate said secret to others, or in any manner to aid others in using the same, or in constructing the machinery, will not only be a breach of his contract with his employer, but a breach of confidence and violation of duty which will be enjoined by a court of equity.

It is clear from the allegations of the complaint, which are admitted to be true by the demurrer, that appellee, by the expenditure of money and time, has built up a successful business, and that said success is largely due to said complete machine for the pasting of the bottoms of the paper bags, the invention and discovery of Taggart. Said machine was a secret, and, under the facts alleged, even if no agreement was made, one would be implied that he was not to disclose the secret of the construction of the machine, or impart any information by which any one could construct such a machine. He occupied a confidential relation to appellee, and in such case the law raises an implied contract between them that the employe will not disclose any trade secret imparted to him, or discovered by him, in the course of his employment. A disclosure of such secrets thus acquired is not only a breach of contract on his part, but is a breach of trust which a court of equity will prevent.

In *National Gum, etc., Co.* v. *Braendly*, 27 App. Div. 219, 51 N. Y. Supp. 93, it was said on p. 225, concerning the power to restrain the disclosure of a trade secret: "That power and the extent to which the secret will be protected was examined and determined in this court in the case of *Eastman, etc., Co.* v. *Reichenbach* (79 Hun 138), where the cases were examined and the conclusion reached that when the value of the property rested in the secret processes which were not patented, an employe who acquired a knowl-

edge of the processes by virtue of his employment would be restrained from a disclosure of them at the suit of his employer."

It is true that it is alleged that when Taggart was employed by appellee there were in existence machines which would so fold and paste one end of a paper tube as to form a complete paper bag; but it is also alleged that the construction of said machine was a secret not generally known to those engaged in the manufacture of paper bags, and not known to plaintiff, and that those owning such machines kept the same a secret. It is not alleged that appellee's machine for pasting the bottoms of said paper bags was like those used by other parties; on the contrary, it is expressly averred that "there are no other machines like it;" nor does the mere fact that appellee's machine performed the same work as the machines referred to raise any presumption that it was the same. It appears from the complaint that said machines cannot be constructed except by the use of information furnished by Taggart in violation of his duty and agreement with appellee. As we have shown, the divulging and use of such information can be enjoined.

Moreover, the demurrer to the complaint was the joint demurrer of all the appellants, and if the facts stated in the complaint constituted a cause of action against any one or more of appellants, it was properly overruled. Miller v. Rapp, 135 Ind. 614, 617, 618, and cases cited. The court did not err, therefore, in overruling the said demurrer.

Each of the appellants insists that the court erred in overruling his separate motion for a new trial. The causes assigned for a new trial were that the finding was not sustained by sufficient evidence, and the same was contrary to law. The evidence is to some extent contradictory, but after a careful consideration of the same we think there was evidence which fully sustains the finding of the court. Moreover, there was evidence which not only showed that

Taggart agreed not to disclose the construction of the paper bag machine planned by him for appellee, nor to build said machine for others, but that the conditions and surroundings under which Taggart, Lahr, Huston, Young, Buescher, and the Buescher Manufacturing Company, respectively, performed their work for appellee, were such as authorized the court to find that they must have known that appellee intended to keep said machine a secret, and from which an agreement on their part to keep the same a secret would be implied.

Appellants insist that the evidence shows that appellee's paper bag machine is a duplicate of other machines which are patented. Many of the witnesses in describing the machines alleged to be patented, as well as appellee's machine, did so with reference to some models or drawings thereof which were before the trial court, but of which this court has, and from said evidence can have, no knowledge. If any blue prints or drawings of appellee's machine are contained in the bill of exceptions, our attention has not been called to the same; but, if they were, the testimony of said witnesses is not in such form that the same could be applied thereto. It is evident, therefore, that, under the rule declared in *Consolidated Stone Co.* v. *Summit*, 152 Ind. 297, 303, the bill of exceptions does not contain all the evidence given in the cause.

Finding no available error in the record the judgment is affirmed.

Baker, C. J., took no part in this decision.