### INGLE v. LANDIS TOOL CO. et al.

(District Court, M. D. Pennsylvania.   June Term, 1919.)

#### No. 267a.

1. PATENTS ☞202(1)—RIGHTS TO PARTLY PERFECTED INVENTION PASSES BY ASSIGNMENT OF ALL PATENTS, ETC.

Assignments, by which a concern transferred a boring machine, together with all patents, drawings, patterns, etc., relating thereto, *held* to convey any rights the assignor had in an unpatented improvement made by one of its employés.

2. PATENTS ☞93—EMPLOYER ENTITLED TO INVENTION BY EMPLOYÉ.

Where a designer, employed to make improvements in a boring machine, left the results of his work with his employer, and later returned at the request of the employer's assignee to give all necessary assistance in explaining the construction and operation of the machine, etc., *held*, that the employé's rights to the invention passed to his employer under their contract of employment.

3. PATENTS ☞203—ASSIGNEE'S RIGHTS NOT GREATER THAN THOSE OF PATENTEE.

A patentee's assignee, who was familiar with all the transactions which constituted proof that the patentee had sold his inventive powers to his employers, has no better title to the patent than his assignor.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. BANKRUPTCY** ⟷138(2)—RIGHTS TO INVENTION ACQUIRED BY PARTY CLAIM-
ING UNDER TRUSTEE'S SALE.

Where an employer became bankrupt, and its assets and applications
for patents on a boring machine were sold to trustees for creditors, who
assigned them to the I. Company, which later sold and assigned them to
defendant, and an employé remained in the employment of the employer's
successors and completed an improvement prior to the sale to defendant,
defendant acquired title to the improvement, whether it was completed
prior to bankruptcy or not.

**5. PATENTS** ⟷183—RIGHTS TO PARTLY PERFECTED INVENTION GOVERNED BY
GENERAL RULES.

The sale of a bankrupt's interest in a partly perfected invention upon
which patent had not issued is governed by the general principles relating
to bargains and sales, since Rev. St. § 4898 (Comp. St. § 9444), requiring as-
signments of patents to be in writing, applies only where the patent has
issued.

**6. PATENTS** ⟷202(1)—ASSIGNEE HOLDS LEGAL TITLE IN TRUST FOR EQUITABLE
OWNER.

The assignee of a patentee holds the legal title in trust for the owner
of the equitable title.

**7. PATENTS** ⟷316—COURT HAS POWER TO REQUIRE ASSIGNMENT OF PATENT IN
INFRINGEMENT SUIT TO EQUITABLE OWNER.

Where a defendant set up its equitable title to the patent involved in
an infringement suit, the court, having jurisdiction of the parties and
subject-matter, may do complete equity between them by dismissing the
bill and requiring plaintiff to assign to defendant the legal title to the
patent in suit.

In Equity. Patent infringement suit by Arthur H. Ingle against
the Landis Tool Company and the Gurney Electric Elevator Company.
Bill dismissed, and plaintiff required to assign legal title to patent to
the first-named defendant.

Charles H. Howson, of Philadelphia, Pa., Clyde L. Rogers, of Bos-
ton, Mass., and James G. Sanderson, of Scranton, Pa., for plaintiff.

E. W. Bradford, of Washington, D. C., and Fred C. Hanyen, of
Scranton, Pa., for defendant.

WITMER, District Judge. In this infringement suit, the sole ques-
tion at issue is one of title or ownership of the improvements in a
boring machine, forming the basis of this controversy, and covered
by letters patent, on application of William R. Carey, No. 1,244,449.

It appears that the Ingle Machine Company was organized in 1904
Having purchased from Conrad M. Conradson the right to manufac-
ture a horizontal boring machine which he had invented, together with
assignments for patents, the company began the building and sale of
these machines. The machines were improved through the efforts of
the company, and in December, 1913, when it went into bankruptcy, it
had pending several applications for patents on improvements, includ-
ing the application for the basic invention of Conradson. For some
time preceding, William R. Carey was in the employ of the company
as a designer on the boring machine and other tools, which the company
was manufacturing. He was working for the company, and paid as
such for his services. In the course of his employment Carey made
drawings, consisting of detailed layouts, said to be improvements on
the machine, intended to overcome certain defects due to weakness in
gearing, approximately as shown in the patent. His work in this par-
ticular was about reaching completion, when bankruptcy intervened.

In January, 1914, the assets of the company were sold by order of the bankrupt court to William Gleason, Charles P. Schlegel, and L. P. Willsea, trustees for the creditors. The applications for patents relating to the boring machine were likewise assigned to these trustees on May 29, 1914, and in turn by them assigned to the Ingles Corporation. Carey remained in the employ of the parties during the transfer and completed his undertaking.

On June 4, 1914, Carey having left his drawings in the possession of his employer and found employment elsewhere, the Ingles Corporation sold and assigned to the Landis Tool Company, one of defendants, all of its right, title, and interest in the applications for letters patent pertaining to said boring machine. A final agreement and assignment was made August 13, 1914, in which the Ingles Corporation, as the owner of the Rochester Boring Machine Company, manufacturers of the Rochester boring machine, sold for $10,000 to the Landis Tool Company all the patents, drawings, patterns, special tools, jigs, templets, part lists, advertising matter, and correspondence relating to the manufacture and sale of said boring machine, including the right to use the name under which said boring machines have been manufactured and sold, agreeing to discontinue the manufacture of such machines, as long as the Landis Company chose to carry on the business, and further specifying that, not only the items set forth should be included in the sale and transfer, but "any others which might be classed as belonging to the manufacture of the boring machines and accessories thereto." That the Ingles Corporation sold and intended to transfer to the Landis Company all of its property interest in and to the boring machine, as it was then constructed and in prospect of construction, as well as the business of manufacturing and selling of same, is not doubted. Indeed, there is no one here speaking for the corporation claiming to the contrary.

[1] Though the agreement between the parties is not as full and explicit as it might be, yet it is fully established by the testimony that the Carey improvements and drawings, being an important feature of the machine should pass with the same in the transfer of the property. It was not only so agreed, but, indeed, the drawings and all that was tangible was delivered over by the assignor to the assignee, together with instructions how to avail itself of the alleged advantages and benefits. The conclusion follows that, if the corporation had title to the improvements designed and sketched by Carey, the same were transferred and passed over to the Landis Company.

[2] Whether Carey obtained the right to the monopoly implied in the patent depends upon the character of his employment and the understanding between the parties. Dowse v. Federal Rubber Co. (D. C.) 254 Fed. 308. He was employed as a designer to make the drawings and design certain improvements in detail relating to the construction of the machine, whereby it might be made stronger and capable of doing heavier work in a more satisfactory manner. This is what he accomplished through the aid of others interested in the improvement of the machine. He was paid for what he accomplished, and accomplished what he was paid for—to improve the machine of

his employer, in order that it might have greater value as such, and be more salable as such machine. Though there was no writing to the effect, yet the circumstances attending his employment, the nature of the work he performed, as well as the subsequent conduct of Carey, is convincing that it was not intended that he should retain any personal interest whatever in the result of his efforts in the improvement of the machine.

After bankruptcy intervened, Carey continued his efforts, remaining until shortly before the transfer to the Landis Company. When he changed his employment, he left the result of his undertaking with his employers, drawings and all. After the transfer of the machine, and all pertaining, was fully effected, and delivery of drawings to the Landis Company, Carey, upon the invitation of this company, for a consideration, came from Ohio, where he was then employed, to the company's plant at Waynesboro, Pa., for the purpose of instructing those in charge of the construction of the machine how to make use of and avail themselves of the advantage of his improvements upon it. He remained at the company's plant three or four days, giving every possible assistance regarding the matter of his drawings and their application to the matter to be corrected in the machines then in course of construction and about to be constructed. He was acquainted with the sale and transfer that had taken place, and it could not be otherwise than that he was aware of the full purpose of the Landis Company to push the manufacture and sale of these machines, with the improvements in which he now claims he then had a personal property interest. Without a word of protest, or an inkling of a thought that he was at all interested, he returned home, and later fully and freely wrote the Landis Company concerning further particulars in reference to the matter of his visit and the use of his improvements.

The inference follows that he had no idea then of claiming an interest in what he had accomplished for his former employers, and that, in fact, the product of his labors, as he understood his relations with them, belonged to those who paid him for the very thing accomplished. In this particular there is no doubt that he sold in advance to his employers his inventive powers and all that was accomplished thereby. As was said by Mr. Justice Brewer, in Solomons v. United States, 137 U. S. 346, 11 Sup. Ct. 89, 34 L. Ed. 667:

"If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer."

[3] Surely Carey's assignee has no better title than he. Ingle, the plaintiff assignee, was acquainted with Carey's employment, and all that was intended thereby to be accomplished, and all that was in fact achieved. He was made acquainted with the sale and transfer of the machine and its belongings from the Ingles Corporation to the Landis Company, as also with the intervening changes in title. He is not a

stranger to what transpired. He was interested in the initial purchase of boring machines, as an officer of the corporation that took his name. He pushed its development, manufacture, and sale prior to the bankruptcy proceeding, and later endeavored to repurchase the same from the Landis Company. His failure to succeed resulted in the letters patent taken out in the name of Carey and assigned to himself. These were intended, and to some extent were used, as a wedge to accomplish his purpose. Though he may have other than fancied grievances, he has no cause to complain of the conduct of the defendants and as to them. If he otherwise possessed the semblance of claim to Carey's invention, he would be estopped from asserting his claim to a monopoly of the improvements claimed by Carey under his letters patent.

[4, 5] But plaintiff argues that, if the Ingles Company had otherwise a right to the assignment of the Carey invention, when bankruptcy overtook Carey's effort, it had not as yet assumed such a stage of development as would impress the same with a property right, or as an asset transferable by the bankruptcy proceedings, and therefore title did not pass out of the Ingles Company.

Whether as an invention it was completed while Carey was in the employ of the Ingles Company, or afterward, while continuing to devote himself to his undertaking in the employ of those who succeeded, by purchase, to the business of the company and the improvement of the machine in question is not important. Surely, at some time, while in the employ of the defendants' predecessor in title, Carey completed his effort, which was at all times, and in all of its stages, the property of his employers, who joined in the transfer to defendant the Landis Company. And whatever may have been its stage of development when bankruptcy intervened is not material, since the property of the bankrupt, the machine and all its belongings, passed in the same manner as any other property acquired. Ager v. Murray, 105 U. S. 128, 26 L. Ed. 942. The sale of the bankrupt's property interest in the improvement, if incomplete or otherwise, and the inchoate right to the exclusive use in the invention, if complete, before patent was granted, is governed by the general principles of the law relating to bargains and sales. Cook v. Sterling Electric Co. (C. C.) 118 Fed. 46; In re Myers-Wolf Mfg. Co., 205 Fed. 289, 123 C. C. A. 441.

There is no provision of law that prevents the assignment of the invention not patented. Such is regarded as other property. The law only takes it out of the ordinary when a patent therefor is granted. Then it is that the statute (section 4898, R. S. U. S. [Comp. St. § 9444]) applies, and requires that the assignment, conveyance, or grant, or whatever interest therein, shall be in writing.

[6] Though the plaintiff, through the inventor, obtained the patent in suit, he holds such legal title in trust for the owner of the equitable title. Dalzell v. Mfg. Co., 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749.

[7] The defendant having set up its equitable rights in the answer filed, and prayed for an order requiring the plaintiff to assign the title, which he nominally holds, this court, having jurisdiction of the parties and the subject-matter, will do full and complete equity between them.

It follows that the bill will be dismissed, at the cost of the plaintiff, and in the decree presented an order on the plaintiff may be incorporated, requiring him to assign to the defendant Landis Company the legal title to the patent in suit.