Saul J. Rosenthal, Judgment-Creditor, *v.* Albert Goldstein, Judgment-Debtor.

(Supreme Court, Kings Special Term, July, 1920.)

Supplementary proceedings — when judgment debtor cannot be compelled to answer questions relating to an invention — patents.

The right of an inventor before he has disclosed his secret is not property in the general sense of the word.

Where the examination of a judgment debtor in proceedings supplementary to execution discloses that he claims to have

invented some device for sound production to be used in connection with phonographs, and to have constructed some models thereof, but it also appears that he has not obtained any patent for it nor applied for one, and that he has not made public his ideas, he cannot be compelled to answer questions which will reveal the nature of his claimed invention.

MATTER of proceedings supplementary to execution.

Hirsh, Newman & Reass, for judgment-creditor.

Buchler & Levy, for judgment-debtor.

CROPSEY, J. The examination of the judgment-debtor reveals the fact that he claims to have invented some device for sound production to be used in connection with phonographs, and to have constructed some models thereof. He has not obtained any patent for it, nor has he made application for a patent, nor has he made public his ideas. The question for determination now is, whether he should be compelled to answer questions which will reveal the nature of his claimed invention. Section 2435 of the Code of Civil Procedure provides that a debtor may be examined " concerning his property." So, if the subject matter of the debtor's ideas constitute property rights, the inquiries should be answered; otherwise not. It is a fact that an inventor, before making application for a patent, may assign or transfer his rights to it (Barnes Fed. Code, § 8945; *Cammeyer* v. *Newton*, 94 U. S. 225, 226), but, even where that is done, the application for the patent must be signed by the inventor. § 8945. This, however, does not determine the question at issue.

Under the Constitution, congress has power to secure, for a limited time, " to authors and inventors the exclusive right to their respective writings and discoveries." Art. I, § 8, subd. 8. Under this author-

ization, congress has regulated the issuance of letters patent. Barnes Fed. Code, §§ 8929–8988. To obtain a patent, an inventor must make application to the commissioner of patents, and file in the latter's office a written description " in such full, clear, concise and exact terms as to enable any person skilled in the art or science to which it appertains   *   *   * to make, construct, compound and use the same." § 8937. When issued, the patent grants, for the term of seventeen years, the exclusive right " to make, use and vend the invention or discovery." § 8930. At common law, there was no such exclusive privilege. This monopoly is entirely the creature of statute. *Gayler* v. *Wilder,* 10 How. (51 U. S.) 477, 494; *American Hide & Leather Splitting & Dressing Machine Co.* v. *American Tool & Machine Co.,* 4 Fish. Pat. Cas. 284, 294; *Marsh* v. *Nichols, Shepard & Co.,* 128 U. S. 605, 612. While the patent confers the right of monopoly and the resulting benefits, it grants to the inventor no right in the conception of his mind, in the secret of his invention that he did not before possess. *Jewett* v. *Atwood Suspender Co.,* 100 Fed. Repr. 647, 648. He always had, at common law, as he now has, the right to preserve the secret of his inventive genius and to enjoy the fruits of every legitimate utilization thereof, but, upon discovery, the exclusive rights terminated and his secret became public property. His exclusive right to his invention depended upon his success in guarding his secret. *Patterson* v. *Kentucky,* 97 U. S. 501, 507; 30 Cyc. 815.

The statute authorizing the issuance of letters patent accomplishes, therefore, a two-fold purpose. It secures to the public forever, after the expiration of the patent, the benefits flowing from the inventor's genius, and it rewards the latter by giving him, for a limited period, the exclusive privilege of making,

using and vending. But the inventor is rewarded not for making the discovery but for disclosing his secret to the public. The patent, therefore, is in the nature of a contract. The disclosure of his secret by the inventor is the consideration for the grant of a monopoly by the government. 30 Cyc. 816. In *Jewett v. Atwood Suspender Co.,* 100 Fed. Repr. 647, 648, Judge Wheeler said: " It [the patent] is merely an incorporeal right to exclude others from using the invention throughout the United States conferred by the government upon compliance with certain requirements." And in *National Hollow B. B. Co.* v. *Interchangeable B. B. Co.,* 106 Fed. Repr. 693, 701, Judge Sanborn said: "A patent is a contract by which the government secures to the patentee the exclusive right to vend and use his invention for a few years, in consideration of the fact that he has perfected and described it and has granted its use to the public forever after."

The right possessed under letters patent consists, therefore, not in the secret existing and hidden in the inventor's mind, but in the exclusive privilege or monopoly of making, using and vending the physical product of the invention. This exclusive privilege is a property right recognized in law and clothed with the usual attributes of property in general. *Wilson* v. *Rousseau,* 4 How. (45 U. S.) 646, 674. So when the inventor has made application for a patent and has described his invention in " full, clear, concise and exact terms," he has made the disclosure to the public which forms the consideration for the grant to him of monopolistic privileges evidenced by the letters patent. He has then performed his part of the contract, and is tentatively entitled to a patent. This right is inchoate and also may properly be denominated property in the common acceptance of that term. It is a right sus-

39

ceptible of accurate description, is enforcible, and generally possesses the attributes of property. So it has been held, and properly so, I think, that the rights of an inventor under an application for a patent which he has made, although no patent has yet been issued, constitute property which passed to his trustee in bankruptcy under the Bankruptcy Act, section 70 (2), (5). *Matter of Cantelo Mfg. Co.,* 185 Fed. Repr. 276; *Matter of Myers-Wolf Mfg. Co.,* 205 id. 289. *Matter of McDonnell,* 101 Fed. Repr. 239, and *Matter of Dann,* 129 id. 495, which hold to the contrary, were considered in the cases above cited, and were not followed for the reasons stated.

Where an application for a patent has been filed, the disclosure has been made which entitles the inventor to the monopoly to be granted by the government. But, before the application is made, the right of the inventor is merely a common-law right to enjoy the fruits of his invention so long as he may be able to guard successfully his secret. Upon discovery, the secret inures to the benefit of the public. This right, therefore, lacks the primary and essential characteristic of property, viz., the capability of being exclusively possessed, owned and used. *Marsh* v. *Nichols, Shepard & Co.,* 128 U. S. 605, 612. True, it is possessed and it is owned and it may be used, but the possession and the ownership and the use depend upon the adroitness of the owner in guarding his secret. The ownership is not protected in the sense that property generally is protected by the law. And while this right may receive a measure of protection as against one obtaining the secret by fraudulent means or by breach of a fiduciary relationship, it is not a property right which the owner can enforce generally. *Durham* v. *Seymour,* 161 U. S. 235, 238; *Brown* v. *Duchesne,* 19 How. (60 U. S.) 183, 195; *Rein* v. *Clayton,* 37 Fed,

Repr. 354, 357; *American Hide & Leather Splitting & Dressing Machine Co.* v. *American Tool & Machine Co.,* 4 Fish. Pat. Cas. 284, 294. It follows that, before application is made for a patent, the inventor has no property right in the invention which can be subjected to the payment of his debts. See *Gillett* v. *Bate,* 86 N. Y. 87, 92. There is a dictum to the contrary in *Fisher* v. *Cushman,* 103 Fed. Repr. 860, 866, but, for the reasons above given, it is believed to be unsound.

It is true that when a patent has issued the inventor can be compelled to make an assignment of his property right for the benefit of his creditors (*Inventions Corp.* v. *Hobbs,* 244 Fed. Repr. 430, 444; *Clan Ranald* v. *Wyckoff,* 9 J. & S. 527; *Barnes* v. *Morgan,* 6 T. & C. 105; *Gillett* v. *Bate,* 86 N. Y. 87, 92), although a receiver in supplementary proceedings might not obtain title to the patent right. *Ager* v. *Murray,* 105 U. S. 126. But it does not follow from this that an inventor can be compelled to file an application for a patent. The right of the inventor to guard and preserve his secret is as well established as is his right to secure from the government a monopoly by disclosing his secret. And section 8957 (Barnes Fed. Code) provides that no witness shall be guilty of a contempt " for refusing to disclose any secret invention or discovery made or owned by himself." This may well be a statutory declaration of the inviolability of the common-law right of the inventor to preserve his secret. It clearly seems opposed to the contention that he may be compelled to file an application and so reveal his secret. This provision is in harmony with the result arrived at, namely, that the right of the inventor, before he has disclosed his secret, is not property in the general sense of the word.

The judgment debtor need not answer the questions to which objections have been made.

Ordered accordingly.