## M. J. LEWIS PRODUCTS CO. v. LEWIS.
### No. 6727.

District Court, E. D. Pennsylvania.
Dec. 24, 1931.

Brown & Williams, of Philadelphia, Pa., for plaintiff.

Jenkins & Bennett, of Philadelphia, Pa., and Harry Frease, of Canton, Ohio, for defendant.

KIRKPATRICK, District Judge.

The plaintiff by this suit in equity seeks to restrain the defendant from making, selling, or using certain types of cabinets for housing electric meters, switches, and fuses, as to which cabinets applications for patents have been filed and are pending; no patents having as yet been issued.

The bill discloses several distinct grounds upon which the relief is sought, and the facts alleged in support of each will be taken up separately.

1. The bill avers in substance that the defendant, while in the plaintiff's employ, agreed to assign to the plaintiff all inventions which he might make while so employed; that while so employed he made three inventions relating to meter cabinets, applied for patents upon them, and assigned the inventions and the patent applications to the plaintiff, thereby transferring to the plaintiff "the entire and absolute property therein"; and that, having left the plaintiff's employ, he is now engaged in making and selling meter cabinets, like those covered by the

patent applications, in competition with the plaintiff, and to the plaintiff's injury.

■ While the law recognizes certain rights in an unpatented invention, they do not include the right to prevent others from making, selling, and using the invention. " * * * The discoverer of a new and useful improvement is vested by law with an inchoate right to its exclusive use, which he may perfect and make absolute by proceeding in the manner which the law requires." But, " * * * this right is created by the patent, and no suit can be maintained by the inventor against any one for using it before the patent is issued." Gayler v. Wilder, 10 How. 493, 13 L. Ed. 504. " * * * This court have always held that an inventor has no right of property in his invention, upon which he can maintain a suit, unless he obtains a patent for it. * * * " Brown v. Duchesne, 19 How. 183, 195, 15 L. Ed. 595. "The patent * * * may be said to create a property interest in that invention. Until the patent is issued, there is no property right in it; that is, no such right as the inventor can enforce. Until then there is no power over its use, which is one of the elements of a right of property in anything capable of ownership." Marsh v. Nichols, Shepard & Co., 128 U. S. 605, 612, 9 S. Ct. 168, 170, 32 L. Ed. 538.

■ Rights in an unpatented invention may be transferred, but the transferee takes nothing more than the original owner had; that is, nothing beyond the inchoate right to a patent for the invention, when and if issued. By-Products Recovery Co. v. Mabee, 288 F. 401, 404. A patent application "is practically a law suit brought by the inventor to persuade or compel the government to make a grant of a monopoly to which he thinks himself entitled." Mills Novelty Co. v. Monarch Tool & Mfg. Co. (C. C. A.) 49 F.(2d) 28, 31.

■ It is clear, therefore, that the averment of the bill to the effect that the plaintiff became vested with "the entire and absolute property" in the inventions and patent applications gives it no standing to maintain this suit. The sale of the inventor's rights as above defined is, however, governed by the general principles of the law relating to bargains and sales (Cook v. Sterling Electric Co. [C. C.] 118 F. 45; Ingle v. Landis Tool Co. [D. C.] 262 F. 150); and if there be in the agreement or assignment declared upon in this bill any covenant by which the defendant undertakes to refrain from making and selling meter cabinets embodying the inventions, I see no reason why breach of it may not be restrained. Can such covenant be found?

Certainly, as the facts are stated, there was no express agreement by the defendant to relinquish this right which he had in common with all the world. By the assignment the plaintiff has acquired a new idea and the right, if and when a patent issues, to restrain the defendant and all others from using that idea. Did it impliedly bargain for more?

There have been cases in which covenants on the part of the transferor not to use or disclose the idea which was the subject of the transfer have been imported into the assignment by implication. Such implied covenants may arise from the inherent nature of the thing transferred, or the relation of the parties to the transfer.

Thus, in Pomeroy Ink Co. v. Pomeroy, 77 N. J. Eq. 293, 78 A. 698, an inventor who had assigned secret formulas and processes for making ink was restrained from selling the same formulas and processes to others. Now the possessor of a secret process which is not discoverable from mere inspection of the product may not have the legal right to exclude the public from its use, but he is practically able to do so so long as it remains a secret, and that fact gives it most of its value. The secret may be said to be the whole subject-matter of the sale, and, when the inventor sells or discloses the secret to others, he is destroying the very essence of the thing which he had sold to the plaintiff. Obviously an obligation not to disclose it will usually be an implied term in such contracts.

In Westervelt v. National Paper & Supply Co., 154 Ind. 673, 57 N. E. 552, a similar implied term was found in a contract to assign an invention for a machine, but the machine was intended for use in the plaintiff's factory and there was no thought of marketing it. The court said (page 554 of 57 N. E., 154 Ind. 673): "It appears from the complaint that said machine cannot be constructed, except by the use of information furnished by Taggart in violation of his duty and agreement with appellee." In other words, the sale was practically that of a trade secret, although it happened to be a patentable article as well.

■ In the case at hand, the principles which protect the purchaser of a trade secret do not apply. The invention appears to be for a simple structure which is being market-

ed widely by the plaintiff, and there is nothing in the bill to suggest that any one of the plaintiff's customers or anybody else who obtains one of the cabinets cannot copy it and proceed to manufacture and sell in quantity. Inasmuch as that right is open and accessible to the whole world, it would seem that if for any reason the plaintiff desired the defendant not to exercise it, it would have so contracted expressly.

There are also cases in which a confidential or fiduciary relationship existed between the plaintiff and the defendant, which relationship in itself was sufficient to move the court to restrain the plaintiff from entering into competition with the defendant. Thus in New Haven Sand Blast Co. v. Dreisbach, 102 Conn. 169, 128 A. 320, the defendant, who had agreed to assign to the plaintiff corporation future improvements on certain patents, began, under a subterfuge, to manufacture and sell articles covered by his contract, while he was still president of the plaintiff company and acting as such. Obviously the relationship between the parties was the real basis upon which the injunction issued.

It appears from the present bill that the defendant did not begin the manufacture and sale of meter cabinets until after he had left the employ of the plaintiff company. It also appears from the facts as alleged that the ideas embodied in the invention were not acquired by him as a result of any confidential communications to him by the plaintiff, or through his contact with any secrets of its business, but were his own ideas.

The distinctions noted above were pointed out in Shur-Loc Elevator Safety Co. v. Purcell, 196 App. Div. 546, 188 N. Y. S. 25, a case in which injunctive relief as to unpatented inventions was denied, upon facts like those set forth in this bill (except that some of the patent claims had actually been rejected—a matter of no moment, since, as has been pointed out, all unpatented ideas stand on the same plane).

I am unable to find an implied covenant in the agreement or assignment which gives the plaintiff the right to maintain this bill.

The decision in Standard Scale & Foundry Co. v. McDonald [C. C.] 127 F. 709, seems to proceed upon the somewhat broader ground that any suit to restrain the use of an unpatented invention involves the determination of the exclusive right to the invention and so encroaches upon the field occupied by the statutory patent law which forbids the courts to entertain that issue until after the grant of a patent; the prescribed steps having been duly taken. The conclusion reached in the present case, however, is based upon the absence of any right of the plaintiff, rather than want of jurisdiction over the subject-matter in the court.

■ 2. The bill also avers that the defendant "was to devote his whole time and attention to the business of the plaintiff and to create and develop new and practicable inventions applicable thereto"; that the inventions were made while the defendant was in the plaintiff's employ; and that all expenses in connection with the inventions and the applications for patents were borne by the plaintiff.

The rule is well settled that, while an employment to invent machinery for use in a particular factory or in connection with a particular business may give rise to a license to the employer to use the machinery invented, it does not confer upon the employer the legal title to the invention or to a patent for it. Hapgood v. Hewitt, 119 U. S. 226, 7 S. Ct. 193, 30 L. Ed. 369; Dalzell v. Dueber W. C. Mfg. Co., 149 U. S. 315, 13 S. Ct. 886, 37 L. Ed. 749.

However, it has been assumed in the foregoing discussion that the company became the owner of such rights as fully and completely as the law permits, and consequently the allegations as to the nature and purpose of the employment add nothing to the plaintiff's rights.

3. The bill further avers certain facts on the strength of which the plaintiff seeks relief under the law of unfair competition. The facts are:

■ (a) That the defendant is making and selling meter cabinets "exactly or substantially like the meter cabinets furnished by the plaintiff"; that the defendant has copied the form, shape, color, and appearance of the cabinets made by the plaintiff, thus producing confusion in the public mind as to the identity and source of the manufacture of the goods. It will be noted that the bill does not allege any special trade-mark, peculiar distinguishing features, secondary meaning, or any other exclusive rights in the form, color, shape, and appearance of its cabinets, or that any of the details in which the defendant has copied the cabinets are not mechanical, structural, or functional requirements. The law is settled beyond all question that where the article involved "is

merely a mechanical device designed to perform a strictly mechanical function, and is without ornamental or non-functional features, unfair competition cannot be predicated upon the sale of similar articles. Marvel Co. v. Pearl (C. C. A.) 133 F. 160; Pope Automatic Merchandising Co. v. McCrum-Howell Co. (C. C. A.) 191 F. 979, 40 L. R. A. (N. S.) 463; John H. Rice & Co. v. Redlich Mfg. Co. (C. C. A. 3d) 202 F. 155, 44 L. R. A. (N. S.) 1057; Daniel v. Electric Hose & Rubber Co. (C. C. A.) 231 F. 827.

■ (b) That the defendant is using the same numbers as the plaintiff to designate the various sizes and types of cabinets, substituting, however, entirely different letters; it being alleged that the plaintiff uses a combination of letters and numbers to designate these sizes and types. Taking the numbers and letters together, the bill discloses that the defendant is using, not the same but different symbols to designate the types and sizes. However, even if he were using the same, the allegation at most could amount only to the evidence of intent; there being no suggestion that the numerals and letters perform, or were intended to perform, any part of a trade-mark for the plaintiff's goods, or were in any way indicative of their origin in the minds of the public.

■ (c) That the defendant, without disclosing a severance of his relation with the plaintiff, has endeavored to get certain public utility companies to buy his cabinets instead of the plaintiff's. In the absence of an allegation of fraudulent statements as to his relationship with the plaintiff, I do not understand that the defendant was bound to disclose the status of his relations with the plaintiff to prospective customers.

■ (d) That the defendant marks the meter cabinets which he makes and sells, "Licensed under M. J. Lewis Patents and Patent Applications." It further appears from paragraph 15 that the defendant has made some change in the cabinet, which is alleged to be "slight and immaterial and that he has notified the trade that he has applied for a patent on the improved or altered structure." There is no information that this is not true, but it is stated that no patent has ever been granted to him. Under these averments I do not think that the marking upon his cabinets is substantially misleading, or that it would give this plaintiff any right to proceed on the ground of unfair competition.

The bill will be dismissed.