SAM LOVEN

*v.*

THE PEOPLE *ex rel.* Dr. Peter Fahrney & Sons Co.

*Filed at Ottawa October 11, 1895.*

158    159
94a  $^1$290
94a  $^3$600
94a  $^4$601

158    159
f114a$^1$  59
114a  $^1$  60

1. CONTEMPT—*in what cases defendant's answer is taken as true.* The rule that the sworn answer of defendant in contempt proceedings must be taken as true, applies only where the proceeding is brought to vindicate the majesty of the law or the dignity of the court, and not to cases involving acts treated as contempts, for the enforcement of orders and decrees, as part of the remedy sought.

2. SAME—*violation of injunction against corresponding and soliciting.* An injunction addressed to a former employee of a medicine company, prohibiting him from continuing to correspond with such company's agents or customers and soliciting them to buy his medicines, is violated, so as to render him guilty of contempt, by his correspondence with or sale of medicines to any of such agents or customers, even though they write to him without solicitation.

3. SAME—*no defense that injunction violated was broader than the bill.* The question whether an injunction is broader than the allegations of the bill, or the terms of the contract which the bill was brought to enforce, cannot be litigated in a proceeding to punish for a contempt in violating it, as it is the duty of the party enjoined to obey the order so long as it stands.

4. SAME—*injury inferred from violation of injunction.* Injury to complainant from violation of an injunction will be inferred without

direct proof, on proceedings for contempt, where it appears that the interests protected by the injunction are being violated, and that the complainant has not parted with such interests.

5. SAME—*sufficiency of order in contempt proceeding.* An order adjudging a defendant guilty of contempt in violating an order prohibiting him from soliciting the trade of the customers and agents of the complainant for the purpose of inducing them to purchase medicines of him, need not recite the names of the particular agents and customers whom he has solicited.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

COLLINS, GOODRICH, DARROW & VINCENT, for appellant:

This being a "civil or remedial" contempt proceeding, the court was without jurisdiction, because it was not shown that appellee had suffered any injury by reason of the alleged acts of the appellant. High on Injunctions, sec. 856; *Butler* v. *Niles,* 7 Robt. 336; *People* v. *Diedrich,* 141 Ill. 67.

The affidavit upon which the proceeding for constructive contempt is based, must state facts which, if established, would constitute an offense, and if the allegations of the affidavit are not sufficient in this respect the court is without jurisdiction to proceed. Rapalje on Contempt, secs. 93, 94, and cases cited; *Wilson* v. *Territory,* 1 Wyo. 155; *Ex parte Peck,* 3 Blatchf. 113; *Phillips* v. *Welch,* 12 Nev. 158; *McConnell* v. *State,* 46 Ind. 298; *Batchelder* v. *Moore,* 42 Cal. 412.

Orders of contempt should show the acts described or omitted which constitute contempt, otherwise they should be reversed on appeal. *Bergen* v. *Deering,* 53 N. Y. 894; *DeWitt* v. *Dennis,* 30 How. Pr. 131; *Ex parte Carroll,* 24 Pac. Rep. (Cal.) 518.

HENRY C. NOYES, and I. K. BOYESEN, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a proceeding in chancery, on the relation of the Dr. Peter Fahrney & Sons Company, a corporation, against Sam Loven, for contempt in violating an injunction. The bill upon which the injunction was awarded was brought by the relator against Loven, and alleged, in substance, that for over twenty-five years Dr. Peter Fahrney had been engaged in the business of preparing and selling medicines, and during most of that time had conducted his business in the city of Chicago; that he had expended many thousands of dollars in manufacturing, advertising and selling his medicines, and that those medicines were very valuable, and that the reputation which he had acquired through long experience and fair dealing was of great value; that he had, at various times, invented and prepared certain valuable medicines, and had adopted as his trade-marks in preparing and selling the same, the words "Kuriko," "Ole-Oid," "Uterine" and "Stomach Vigor," and that about July 11, 1890, Fahrney had sold and transferred the good-will of the sale of those medicines, together with the business, to the complainant, as his successor, and that since that date the complainant had continued to manufacture, advertise and sell such medicines with great financial profit to it, but since the transfer, Fahrney, as the complainant's president and the owner of nearly all its stock, had managed and directed the compounding and sale of these medicines; that about April 1, 1889, Fahrney employed Loven, the defendant, as his confidential book-keeper and Swedish translator and correspondent, and that he had continued in such employ up to the time of the transfer of the business to the complainant, and that from that date he occupied the same position with the complainant; that during the confidential relations between Loven and Fahrney and the complainant, Loven had acquired knowledge of the business, so far as advertising and selling of medicines was concerned, but while he was in the

employ of Fahrney, and later in the employ of the complainant, Loven fraudulently, and without the knowledge or consent of Fahrney or the complainant, copied the names of a great number of their customers, together with their post-office addresses, from the books kept by Fahrney and by the complainant, and also acquired the names and addresses of customers by means of his duties as correspondent; that for the purpose of carrying on a fraudulent business in opposition to the complainant, Loven, without the knowledge or consent of Fahrney or the complainant, signed his name in full with the signature of Fahrney in signing letters directed to customers; that when Fahrney employed Loven as aforesaid, and for some time thereafter, Loven received a salary for his service of eight dollars per week, and afterwards his salary was raised to ten dollars, later to twelve dollars, and still later to fifteen dollars per week, which was at that time considered all such service was worth; that at the time Fahrney employed Loven, as aforesaid, it was distinctly agreed by and between Fahrney and Loven that all matters connected with the business should be kept secret by Loven; that Loven agreed not to divulge the secrets of manufacturing or selling the medicines, the list of customers, or any other secrets or information connected with the business which he would acquire while so employed, to any person whomsoever, except with the permission or direction of Fahrney; that this agreement was based on the consideration of Fahrney's hiring and paying Loven wages for his services; that at the time of the transfer of the business to complainant the same agreement was entered into between Loven and the complainant, which agreement was to include all the knowledge and information of the business which Loven had acquired while in the employ of Fahrney, or would acquire by means of his employment with the complainant, and that Loven should not use such knowledge for any purposes of his own, or otherwise.

The bill further alleged, that on or about the 17th day of November, 1890, Loven left the employ of the complainant; that for several months prior to that date he had assisted in opening letters and correspondence received in the course of business; that on or about that date, Fahrney, as the complainant's president, directed other clerks in its employ from thenceforward to open such correspondence, and from that date Loven became dissatisfied with his employment, for what reason complainant did not know; that about November 17, 1890, Loven informed complainant that he had acquired much knowledge of the business and had secured the names of complainant's customers, and that such knowledge was valuable to him, and unless he was paid a large salary he would start in business in opposition to that of complainant in the sale of these medicines, and that he would use the knowledge so acquired in conducting the business; that thereupon the complainant, through its president, discharged Loven from its service.

The bill further represents, that on or about January 15, 1891, Loven, with intent to defraud complainant, commenced to manufacture a medicine which he designated by circulars, correspondence and otherwise, as "Kuraho;" that such medicine was manufactured for the purpose of imitating the medicine known as "Kuriko," manufactured by complainant; that about the same date Loven commenced to manufacture, advertise and sell a medicine designated as "Ole-Oil," which was intended to deceive the customers of complainant, and make them believe that it was the same medicine as "Ole-Oid;" that the use of the words "Kuraho" and "Ole-Oil" was intended to and did deceive the public and the customers of the complainant, and made them believe that it was the same medicine manufactured by complainant, as above stated, and that Loven was threatening to manufacture, advertise and sell the medicines called "Uterine" and "Stomach Vigor" to the complainant's customers; that Loven had little or no

education as a pharmacist or druggist, and was not capable, by education or otherwise, of preparing any medicine which was safe for the public to use, except through information he may have acquired while in the service of Fahrney and complainant, but was pretending to the public, and by circulars to the customers of Fahrney and the complainant, that he was manufacturing the identical medicine manufactured by complainant, as aforesaid, and was attempting and threatening to sell those medicines, or imitations of the same, to the customers of complainant; that Loven was manufacturing and selling those medicines for the false and fraudulent purpose of defrauding complainant and stealing its business, and that in order that he may gain thereby he had taken every advantage of the knowledge acquired as aforesaid to defraud complainant and ruin its business, and had threatened to divulge all its secrets and information of the business which he acquired during his said employment; that he had used labels, bottles and wrappers in close imitation of those used by complainant in the sale of its medicines, for the fraudulent purpose of deceiving the complainant's customers, and had sent out many circulars in regard to the business to customers of the complainant, which had greatly damaged the complainant's business; that he was using every artifice and fraud to destroy the complainant's business, by using all the knowledge acquired while in its confidential employ for such false and fraudulent purposes, and that he had on hand large quantities of medicines and printed circulars ready to ship to complainant's customers, in violation of his agreement with complainant.

The bill prayed for an injunction restraining Loven from advertising, by circulars or otherwise, the medicines known as "Kuriko," "Kuraho," "Ole-Oid," "Ole-Oil," "Uterine" and "Stomach Vigor," under those names or in imitation of the same, or under any other name, and from divulging the secrets of the manufacture of those medi-

cines or the secrets of the business, or from the imitation of wrappers, bottles and labels used by complainant in the business.

The defendant answered, denying the equities of the bill, and at the hearing, upon pleadings and proofs, the facts were found to be substantially as alleged in the bill, and a decree was entered perpetually enjoining Loven, his agents, servants, attorneys and employees, from advertising, by circular or otherwise, the medicines, or an imitation of the medicines, known as "Kuraho," "Ole-Oid," "Kuriko," "Ole-Oil," "Uterine" and "Stomach Vigor," or of "Scandian Blodrenare" or "Scandian Liniment,"—two names adopted by the defendant in lieu of two of the foregoing,—or any name in imitation thereof, used by complainant during defendant's employment, and from imitating wrappers, etc., and from using the name of Dr. Peter Fahrney, or Dr. Peters, or Fahrney, or from communicating the fact, in the sale of medicines, that he had been in the employ of Fahrney or complainant, and from pretending that he knows the ingredients of complainant's medicines, and from in any manner corresponding with complainant's agents or customers, or soliciting them to buy defendant's medicines of any kind, or divulging the names of complainant's customers and agents, or any of the secrets of the business, or interfering therewith.

Some time after the entry of this decree the complainant appeared and filed various affidavits and exhibits tending to charge the defendant with a violation of that portion of the injunction restraining him from corresponding with complainant's agents and customers or soliciting them to buy his medicines of any kind, and a rule was thereupon entered upon the defendant to show cause why he should not be attached for contempt for a violation of the injunction. The defendant appeared in court and answered the rule, and evidence being heard upon the issue thereby made, the court found, from the testimony

and evidence submitted in open court, that the defendant has willfully disobeyed and violated the injunction contained in the final decree entered upon the bill above set forth, and that he has, contrary to the terms of such decree, and in violation of the injunction contained therein, solicited the trade of customers and agents of complainant for the purpose of inducing them to purchase medicines from him, and knowing, at the time he did so solicit them, that the persons so solicited were the customers and agents of the complainant, and that he did sell medicines to agents and customers of complainant in competition with the complainant's medicines, and that he did further solicit and correspond with said agents and customers of complainant in the sale of medicines for the purpose of procuring their trade and custom, to the detriment of the complainant's business as dealers and vendors of medicine, which business is set forth in the decree heretofore entered in the original cause herein, and that such contempt has tended to defeat and impair the rights and interests of the complainant and bring the administration of justice into contempt. It was further ordered, adjudged and decreed that Loven stand committed to the common jail of Cook county for a period of ten days from the date of the order, and that a commitment issue to carry the judgment into effect.

The questions presented by the record are mainly questions of fact, viz., whether the defendant is shown, since the entry of the decree, to have in any manner corresponded with complainant's agents, or solicited them to buy his medicines. A preliminary question is presented by the suggestion of defendant's counsel that in cases of this kind the answer of the defendant, under oath, must be taken as true, and that if that is sufficient to purge him of contempt he should be discharged, whatever may be the nature of the countervailing evidence. We think the rule thus suggested has no application to cases of this kind. There is a well recognized distinction

between the practice in contempts, properly so-called, where the proceeding is brought to vindicate the majesty of the law or the dignity of the court, and cases involving acts treated as contempts, for the enforcement of orders and decrees, as a part of the remedy sought.   In the former, the defendant will be discharged if, by his answers to interrogatories filed, he makes such a statement as will free him from the imputed contempt, and opposing testimony will not be heard.   But as held in *Crook* v. *People*, 16 Ill. 534 (on p. 537): "Presented for the purposes of affording civil redress, there is no solidity in the objection to the taking proofs, on the part of the prosecution, to contradict defendant's answers to the interrogatories filed.   Such is the general, though it may not be the universal, practice, whether on a motion to show cause why the attachment should not issue, or upon hearing of the contempt."

In this case, affidavits of a considerable number of witnesses are submitted on behalf of the complainant who are shown to have been agents or customers of the complainant for a considerable time prior to the decree, and who still continued to be such agents or customers.   Their affidavits show, that prior to the decree they had corresponded with and bought medicines of the defendant at his solicitation; that some time after the entry of the decree they received from him a printed circular advertising his medicines, and asking them to purchase, and that in reply to such circular they had, since the decree, corresponded with the defendant and ordered and received medicines from him.   The defendant, on the other hand, by his own affidavit, denied having mailed or sent to any of the parties whose affidavits are presented, any circulars, and alleging that if they were received by those parties they must have been sent by some other person without his knowledge or consent.   But he admits that on receiving communications from the several affiants ordering medicines, he had corresponded with them and

sent them medicines as ordered, as he claims to have had a right to do, notwithstanding the injunction.

The question is thus raised as to the proper interpretation of the mandate of the injunction, which forbids the defendant, in any manner, from corresponding with the complainant's agents or customers, or soliciting them to buy his medicines. The contention is, that this mandate, properly interpreted, merely restrained the defendant from opening a correspondence with any of the complainant's agents or customers, but that whenever a customer or agent first wrote the defendant, ordering medicines or asking for a circular, the defendant was at liberty to correspond with him and sell him medicines. We confess that we are unable to so understand or construe the injunction order. In the clearest terms the order prohibits the defendant from corresponding with the complainant's agents or customers in any manner, and does not bear the interpretation sought to be put upon it, and it seems to us very plain that the injunction, if interpreted according to the defendant's contention, would fall far short of furnishing the complainant with the protection which it was the evident intention of the decree to furnish. It should be remembered that prior to the decree the defendant had already distributed his circulars advertising his medicines, among the complainant's agents and customers, and was carrying on a correspondence with them and selling them his goods. Under these circumstances, it is a matter of minor importance whether he or they took the first step in carrying on or renewing the correspondence after the entry of the decree. It was the intention of the decree to put an end to the correspondence and business which the defendant was then carrying on in fraud of the rights of the complainant, and to prohibit its continuance or resumption thereafter, and the defendant was therefore prohibited from *in any manner* corresponding with the complainant's agents or customers or soliciting them to buy his medicines. We think the language

of the injunction should be interpreted according to its obvious and natural meaning, and that, adopting such interpretation, the defendant, by his own admission, is guilty of its violation.

But it is said that this interpretation of the injunction order, if adopted, will make the order broader than was warranted by the allegations of the bill, and broader than called for by the terms of the contract which the bill was brought to enforce. Whether this is true or not, the question thus raised cannot be litigated in this proceeding. If the injunction order is broader than the bill called for, the defendant's remedy is by appeal or writ of error, but so long as the injunction stands it is his duty to obey it.

Again, it is contended that the court was without jurisdiction to punish the defendant for contempt, because, as the defendant insists, it was not shown, by the affidavits filed in support of the rule to show cause, that the complainant had suffered injury by reason of the alleged acts of the defendant. It is shown that the same interests which were in litigation in the principal suit, and which are protected by the injunction, are being violated, and from these facts, as it seems to us, injury and legal damage will be inferred. There is no suggestion that the complainant has parted with the rights which were the subject of litigation in the principal suit, or has in any way lost its interest therein. The authorities cited by the defendant in support of his position in this respect seem to be cases where the complainant had no interest in the property affected by the acts sought to be charged as a contempt, or had parted with his interest in the subject of the litigation. In *People* v. *Diedrich,* 141 Ill. 665, cited and principally relied upon by counsel, the defendant was enjoined from manufacturing, or being interested in the manufacture of, certain furnaces. The evidence showed that he was manufacturing the furnaces in a territory in which the complainants in the case had

no right to manufacture them, and it was held that they could not be injured, because it did not interfere with their business.

It is finally claimed that the order adjudging the defendant guilty of contempt is insufficient. If we understand counsel, the insufficiency consists of the fact that it fails to recite the names of the agents and customers of the complainant who have been corresponded with or solicited by the defendant. The terms of the order are, that the defendant "has willfully disobeyed and violated the injunction contained in the final decree entered in the first above entitled cause, namely, the cause of Dr. Peter Fahrney & Sons Company against Sam Loven, on the 28th day of June, 1893, in that the said defendant has, contrary to the terms of said decree, and in violation of the injunction contained therein, solicited the trade of the customers and agents of the complainant, for the purpose of inducing them to purchase medicines of him, the said defendant, and knowing, at the time he did so solicit them, that said persons so solicited were the customers and agents of the complainant, and that he did sell medicines to the agents and customers of the complainant in competition with the complainant's medicines, and that he further did solicit and correspond with said agents and customers of said complainant,   *   *   * and that said contempt has tended to defeat and impair the rights and interests of the complainant herein and bring the administration of justice into contempt." We are unable to see why this recital is not sufficient to show jurisdiction, and justify the entry of the order for the commitment and imprisonment of the defendant.

We think the order of the court is fully warranted by the evidence and the rules of law applicable thereto, and, so far as we are able to see, no error has been committed by the court. The judgment of the Appellate Court will accordingly be affirmed.        *Judgment affirmed.*