STEVENS & COMPANY *vs.* NED C. STILES.

FEBRUARY 4, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, and Parkhurst, JJ.

(1)   *Confidential Relations between Employer and Employee. Equity. Injunctions.*

Complainant employed respondent to examine the eyes of customers and prescribe glasses. Respondent had access to the books and records of complainant, and, as a part of his duties, made a record of cases showing names and addresses of patrons and the particular sort of lenses required

Respondent copied the names and addresses of a great number of the patrons whom he had personally examined, and after leaving employ of complainant, sent circulars to them soliciting their patronage:—

*Held,* that equity will restrain as well from breach of trust or confidence arising from the confidential relation of employer and employee as from breach of express contract, and that respondent would be enjoined from using such names and addresses; from soliciting their patronage, and from divulging such names to anyone else.

(2) *Confidential Relations.*

Where a party enters the employ of another, examining eyes of patrons, prescribing glasses, and making records of the cases examined, the relations between the parties are of a confidential nature.

(3) *Confidential Relations. Employer and Employee.*

Where parties are in a confidential relation to each other, as employer and employee, the employee has no more right to copy records made by himself during the employment than he would have to copy any other records of his employer to which he had access.

(4) *Confidential Relations. Implied Agreement. Trade Secrets.*

An express agreement not to divulge secrets of a business, obtained by an employee, is not necessary if such agreement can fairly be implied from the circumstances of the case and the relation of the parties.

APPEAL from decision of Superior Court granting preliminary injunction. Appeal dismissed.

JOHNSON, J. This is an appeal from the decision of the Superior Court granting a preliminary injunction.

(1) The complainant, a corporation, carried on, under the name of Villers Company, The Modern Optical Shop, the business of examining the eyes of persons by expert opticians, and prescribing, manufacturing, and selling eye-glasses. The respondent was employed by the complainant, at its place of business, to examine the eyes of customers and patrons of said complainant, prescribe glasses, etc. He had access to the books and records of the complainant, and, as a part of his duties, made a record of cases showing the names and addresses of patrons and the particular sort of lenses required by such patrons. It was alleged that the respondent surreptitiously, fraudulently, and without the knowledge of the complainant, copied the names of a great number of such patrons, with their post-office addresses, from such records, and, after leaving the

employ of the complainant, sent circular letters to persons whose names and addresses he had thus acquired, soliciting their patronage, and that the business of the complainant suffered thereby.

On hearing upon the prayer of the complainant for a preliminary injunction, the court below found, as a matter of fact, that the respondent did surreptitiously copy the names and addresses of the complainant's customers from the records of the complainant, and had made use of such list of names and addresses in addressing circulars to the complainant's customers. The court said, upon this point: "We are of the opinion that the surreptitious copying of the names and addresses of the complainant's customers from its records is a violation of confidence against which equity can enjoin, and that equity can enjoin against the use of such lists so unfairly obtained. It is true that equity will not enjoin against an employee carrying away such skill and intelligence as he can carry in his head, other than trade secrets. This would not permit him to copy the records of his employer for future use."

A decree was entered, September 26, 1908, "that the respondent, Ned C. Stiles, and his agents and servants, be, and they hereby are enjoined and restrained, until the further order of this court, from using the names and addresses of the complainant's customers which he copied from the records of the complainant, from soliciting the patronage of such customers whose names he thus obtained, and from divulging the names and addresses of said customers of the complainant to any one else."

From this decree the respondent appealed.

Counsel for the respondent makes no question that equity will restrain the disclosure of confidential communications, trade secrets, and the contents of private papers. But he urges that in the case at bar the relations of the parties were not confidential; that there was no agreement that respondent, upon severing his relations with the complainant company, should not enter into competition with it; that the only names copied from complainant's lists were those of customers he

personally examined, and that to copy and use such a list of names is not a breach of trust or a breach of confidence.

As to the argument that the relations of the parties were not confidential, we do not understand that the fact of agency is denied. It is admitted that the respondent was in the employ of the complainant in its store, examining the eyes of patrons, prescribing glasses, and making records of the cases examined and treated, as also of prescriptions which came to the store from physicians outside. We do not see how such relations can be considered as other than confidential. As to the absence of an agreement not to enter into competition with the complainant, it is sufficient to say that the decree does not enjoin such action on the part of the respondent.

Particular stress is laid upon the claim that the only names copied from complainant's lists were those of customers whom the respondent personally examined, and it is argued that to copy and use such a list of names is not a breach of trust or a breach of confidence. The argument does not commend itself to us. It is elementary that what is done by the agent in the course of his employment is in the legal sense done by the master himself. The respondent could have no more right to copy records made by himself while acting for the complainant than he would have to copy any other records of the complainant to which he had access.

In *Lamb* v. *Evans*, L. R. (1893) 1 Ch. 218 (1892), the plaintiff was the proprietor and publisher of a trade directory, entitled "The International Guide to British and Foreign Merchants and Manufacturers." It had a continental section, which contained a list of continental traders who desired to advertise in this book. These advertisements were arranged under special headings, denoting the nature of the business, which were arranged alphabetically. Each heading was given in English, French, German, and Spanish, and under it the names of the traders who came within it were alphabetically arranged. In some cases only their names and addresses were given, in others more elaborate advertisements were furnished. The headings were prepared by the plaintiff, or by persons employed and paid by him. Each of the defendants Evans was em-

ployed by the plaintiff to canvass for advertisements in a certain district on the continent. In each case the plaintiff agreed to employ the canvasser exclusively in that district, and the canvasser agreed to work therein for the plaintiff exclusively. Each was remunerated by a large commission on the amount received by him for advertisements, and agreed to furnish all blocks and translations, relating to his canvass, free of charge. The blocks, however, were generally furnished by the advertisers, and handed over for the purpose of printing the advertisements. After the engagement of the defendants Evans came to an end, they entered into the service of a rival publication and assisted in adding thereto a "Continental Section." The plaintiff brought his action against the defendants Evans and the publisher of the rival directory. The defendants were enjoined "from using blocks or materials obtained by the defendants E. A. Evans and T. H. A. Evans, or either of them, while in the employment of the Plaintiff, and for the purposes of his said work, or any copies thereof, for the purposes of any work other than the said work of the Plaintiff."

The decree was affirmed on appeal, only being modified so as to permit the publishing of copies at the request, or by the direction, of the advertisers to whom the blocks belonged.

Lindley, L. J. (p. 226), says: "What right has any agent to use materials obtained by him in the course of his employment and for his employer against the interest of that employer? I am not aware that he has any such right. Such a use is contrary to the relation which exists between principal and agent. It is contrary to the good faith of the employment, and good faith underlies the whole of an agent's obligations to his principal. No case, unless it be the one which I will notice presently, can I believe be found which is contrary to the general principle upon which this injunction is framed, viz.: that an agent has no right to employ as against his principal materials which that agent has obtained only for his principal and in the course of his agency. They are the property of the principal. The principal, has, in my judgment, such an interest in them as entitles him to restrain the agent

from the use of them except for the purpose for which they were got. It is said that *Reuter's Telegram Company* v. *Byron*, before Sir G. Jessel, is opposed to this. If that case went on the ground that the Master of the Rolls was not satisfied that the case was plain enough for him to grant an interlocutory injunction, there is nothing more to be said about it; but, if the decision goes further than that, I think that undoubtedly the principle was applied there more narrowly than it ought to have been."

Bowen, L. J. (p. 231), says: "You must look at the whole transaction, and make up your mind what the parties must have intended if the transaction is to have any business-like efficacy at all. If you see that it could not have been intended by the parties that the agent should be allowed to deal in the way he is proposing to do with materials obtained in the course of his agency, then the law will imply that it was part of the bargain that he should not do so. It is said by Mr. Farwell that it must have been intended that the confidential fetter imposed upon the use of these documents should terminate as soon as the book was published for which they were being compiled; and he urges that otherwise we should be importing questions of copyright into the discussion of this branch of the case. On the contrary, it is by insisting on that view that he imports the idea of copyright into this part of the case. The point we are now considering has nothing to do with it. It is perfectly true that you must look at the whole transaction to see what the documents and materials had been collected for; but that would by no means sufficiently protect the employer if the agent was to be left free to do what he liked with the materials the moment the volume was published. That argument, it seems to me, cannot prevail."

Kay, L. J. (pp. 234, 235), says: "The illustrations given in argument show that there might be some material collected by the Defendants while they were the Plaintiff's agents and for the purposes of his book, which material could be legally used for the new book. The argument was put most forcibly as I followed it in this form: Why should they not retain these note-books in their hands, having now left the Plaintiff's

employ, and use them in order to find out the persons abroad with whom they had formerly entered into engagements, and to obtain from those advertisers authority to put advertisements of theirs into a rival publication to be published as a rival of the Plaintiff's book? The answer is a very simple one. All those materials were obtained while you, the Defendants, were acting as the Plaintiff's agents, while you were in that confidential relation to him and for the purpose for which he employed and paid you, viz.: of compiling this book of the Plaintiff's, and therefore to allow you to use any of those materials for your own purposes would be allowing you to use them for a purpose for which they were not compiled—you, while you compiled them, being in the position of the Plaintiff's agent, and there being a confidential relation between you and the Plaintiff."

In the earlier case of *Morison* v. *Moat*, 9 Hare, 241 (1851), an injunction was granted to restrain the use of a secret in the compounding of a medicine not patented, and to restrain the sale of such medicine by a defendant who acquired a knowledge of the secret in violation of the contract of the party by whom it was communicated, and in breach of trust and confidence. Vice-Chancellor Turner said (p. 255): "The subsidiary ground brought forward by the bill, of the Defendant's selling his medicines under the original name and description, was relied upon rather in support of the case of breach of faith and of contract than as a separate and distinct ground for the interference of the Court. Upon that part of the case it is sufficient, therefore, to observe, that there might be difficulty in maintaining it, at all events, until the Plaintiffs should have established their right at law. The true question is, whether, under the circumstances of this case, the Court ought to interpose by injunction, upon the ground of breach of faith or of contract.

"That the Court has exercised jurisdiction in cases of this nature does not, I think, admit of any question. Different grounds have indeed been assigned for the exercise of that jurisdiction. In some cases it has been referred to property, in others to contract, and in others, again, it has been treated as founded upon trust or confidence,—meaning, as I conceive, that

the Court fastens the obligation on the conscience of the party, and enforces it against him in the same manner as it enforces against a party to whom a benefit is given, the obligation of performing a promise on the faith of which the benefit has been conferred; but upon whatever grounds the jurisdiction is founded, the authorities leave no doubt as to the exercise of it." The decree was affirmed on appeal. 21 L. J. (N. S.), Ch. 248.

See also *Yovatt* v. *Winyard*, 1 J. & W. 394 (1820), where Lord Eldon, upon the express ground of breach of trust and confidence, granted an injunction to restrain the defendant, who had been the plaintiff's assistant in his business, from using or communicating recipes which he had surreptitiously copied while in the plaintiff's service. In *Abernethy* v. *Hutchinson*, 3 L. J. Ch. (O. S.) 209 (1824), 1 H. & T. 28, the question again came before Lord Eldon. In this case Mr. Abernethy had filed a bill to restrain the publication of lectures, delivered by him at St. Bartholomew's Hospital, which had been taken down by some one present when they were delivered. The injunction was granted upon the ground of breach of confidence.

In *Prince Albert* v. *Strange*, 1 Mac. & G. 25 (1849), Lord Cottenham said: "This case by no means depends solely upon the question of property, for a breach of trust, confidence, or contract, would of itself entitle the Plaintiff to an injunction."

*Robb* v. *Green* (in the Queen's Bench Division, 1895), 64 L. J. Q. B. (N. S.) 593, is a case on all fours with the case at bar. The defendant, being employed by the plaintiff as manager of his business, as a dealer in pheasants and pheasants' eggs, and having confidential access to his master's books for the purposes of his business, copied from the plaintiff's order-book the names and addresses of the plaintiff's customers, with a view to using them to facilitate his canvass for their custom after he had left the plaintiff's service and had set up a business on his own account, and did so use them. It was held, on the authority of the cases cited *supra*, that the defendant had committed a breach of his implied promise that he would not abuse his master's confidence in matters appertaining to his

service, and that he was liable in damages for any loss caused to the plaintiff by reason of such breach, and judgment was entered for damages "and for the injunction as prayed— namely, that the defendant may be ordered to deliver up to the plaintiff, to be destroyed, the list of the names and addresses of the plaintiff's customers and their keepers copied or extracted by the defendant from the plaintiff's books, and all copies or extracts of or from such list now in his possession or under his control; and that the defendant be restrained from making use of the information obtained by him by copying or extracting such names and addresses." This case furnished another opportunity for a review of the cases considered *supra*, and for the use by the court of some very lucid and vigorous language in passing upon the defendant's claim—that in copying from the plaintiff's order-book, while in his employ, the names and addresses of the plaintiff's customers, with a view to using them to facilitate his own canvass for their custom after he had left the plaintiff's employ and set up a business on his own account, and in so using them, he had done only that which he had a right to do—thus, Hawkins, J. (p. 597): "As to the third contention, I have a very decided opinion that, in the absence of any stipulation to the contrary, there is involved in every contract of service an implied obligation, call it by what name you will, on the servant that he shall perform his duty, especially in these essential respects— namely, that he shall honestly and faithfully serve his master, that he shall not abuse his confidence in matters appertaining to his service; and that he shall, by all reasonable means in his power, protect his master's interests in respect to matters confided to him in the course of his service. It would be monstrous to suppose that a servant would be absolved from the observance of these essential elements to good service unless they were in terms specially provided for in the contract." And again (p. 599), speaking of the argument of defendant's counsel: "Having gone thus far, they are compelled, in order to justify the conduct of the defendant, to contend that a servant might, in his master's service, having confidential access to his master's books for the purposes of

his business, copy, as in this case, the names and addresses of his master's customers with a view to use them to facilitate his canvass for their custom, as soon as he should see fit after the termination of his service; in short, to canvass with the aid of stolen material, without which, having regard to the wide extent over which the customers were spread, practically he could not canvass at all. I confess this seems to me a startling proposition, and to it I do not assent." The decision was affirmed on appeal.

See also *Helmore* v. *Smith*, 56 L. J. Rep. Chanc. 145 (1886); *Tuck & Sons* v. *Priester*, 56 L. J. Rep. Q. B. 553 (1887); *Pollard* v. *The Photographic Company*, 58 L. J. Rep. Chanc. 251 (1888); *Merryweather* v. *Moore*, 61 L. J. Chanc. 505 (1892); and *Louis* v. *Smellie*, 73 L. T. Rep. 226 (1895).

The same doctrine prevails in this country. Judge Story, after speaking of the prevention by injunction of the use of names, marks, letters, or other indicia of a tradesman, by which to pass off goods to purchasers as the manufacture of that tradesman, when they are not so, states the doctrine broadly, as follows: "Upon similar grounds of irreparable mischief Courts of Equity will restrain a party from making a disclosure of secrets communicated to him in the course of a confidential employment. And it matters not in such cases whether the secrets be secrets of trade, or secrets of title, or any other secrets of the party important to his interests." 2 Story Eq. Jur. Sec. 952.

In 1 High on Injunctions, section 19, it is thus stated: "The disclosure of secrets which have come to one's knowledge during the course of a confidential employment will be restrained by injunction. And where a confidential relationship has existed, out of which one of the parties has derived information or secrets concerning the other, equity fastens an obligation upon his conscience not to divulge such knowledge, and enforces the obligation when necessary by injunction. Thus, persons who in the capacity of attorneys, agents or in other confidential relations, have obtained the custody of books and documents of their principals, or have come into possession of secrets relating to their affairs, will be restrained

from making them public." See also 5 Pomeroy's Eq. Jur. § 267.

In *Peabody* v. *Norfolk*, 98 Mass. 452, there was a contract not to disclose secrets as to machinery. The court, Gray, J., says (p. 461): "A secret of trade or manufacture does not lose its character by being confidentially disclosed to agents or servants, without whose assistance it could not be made of any value. Even if, as is argued in support of the demurrer, the process is liable to be inspected by the assessor of internal revenue or other public officer, the owner is not the less entitled to protection against those who in, or with knowledge of, violation of contract and breach of confidence, undertake to disclose it or to reap the benefit of it." He also quotes, with approval, the statement of the doctrine by Judge Story, *supra*, and also the language of Lord Cranworth in the opinion in *Morison* v. *Moat*, on appeal: "The principles that were argued in this case are principles really not to be called in controversy. There is no doubt whatever that where a party who has a secret in a trade employs persons under contract, express or implied, or under duty express or implied, those persons cannot gain the knowledge of that secret and then set it up against their employer." 21 L. J. (N. S.), Ch. 248.

In *Loven* v. *People*, 158 Ill. 159, the bill alleged, *inter alia*, that Loven fraudulently, and without the knowledge or consent of his employers, copied the names of a great number of their customers, together with post-office addresses, by means of his duties as correspondent, from the books kept by his employers. A decree was entered enjoining Loven "from in any manner corresponding with complainant's agents or customers, or soliciting them to buy defendant's medicines of any kind, or divulging the names of complainant's customers and agents, or any of the secrets of the business, or interfering therewith."

Upon the authorities considered it is clear, not only that equity will restrain defendants from disclosing secrets pertaining to plaintiff's business, where the knowledge of such secrets has been acquired while in the employ of the plaintiff, under an agreement that, in consideration of the employment, they would not divulge such secrets, but also that in such case

(4) it is not necessary that there should be an express covenant upon the part of the defendant not to disclose the secrets of the plaintiff's business, if such agreement may fairly be implied from the circumstances of the case and the relation of the parties. See also *Stone* v. *Goss,* 65 N. J. Eq., 756; *Westervelt* v. *Nat. Paper Co.,* 154 Ind. 673; *Eastman Kodak Co.* v. *Reichenbach,* 79 Hun. 183.

Our conclusion is that the doctrine that equity will restrain as well from breach of trust or confidence arising from the confidential relation of employer and employee as from breach of express contract is clearly established by the authorities, and is in accordance with sound reason.

The preliminary injunction was properly granted. The appeal is dismissed; the decree below is affirmed, and the cause is remanded to the Superior Court for further proceedings.

*John I. Devlin,* for complainant.

*Mendell W. Crane,* for respondent.