MERCHANTS' SYNDICATE CATALOG CO. v. RETAILERS' FACTORY CATALOG CO. et al.

(District Court, N. D. Illinois, E. D. July 14, 1913.)

No. 30,839.

1. Injunction (§ 55*)—Unlawful Use of Information Obtained by Employé.

Complainant company established a business by making contracts with factories to sell their goods, furnishing an illustrated catalogue of the same, with retail price lists, to local merchants, with whom it also made contracts, and who sold from such catalogue to customers, making the difference between the catalogue price and the price in a confidential price list furnished by complainant, which caused the goods to be shipped from the factory direct to the customer. Complainant expended a large sum in organizing its business and establishing a valuable good will. Defendant corporation was organized by one of the individual defendants while in the employ of complainant to engage in the same business, which it started by using confidential information obtained by its codefendant while in such employment for that purpose, consisting of lists of factories, merchants, and sales agents with whom complainant had or was negotiating for contracts. It also used complainant's catalogue, at first directly and afterwards by copying it as its own, and wrote complainant's agents, and attempted to secure their services. *Held*, that such use of information so obtained was fraudulent, and constituted unfair competition, and

that complainant was entitled to an injunction restraining the same, and also to an accounting for profits so made.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 108, 109; Dec. Dig. § 55.*]

2. EQUITY (§ 65*)—CLEAN HANDS—APPLICATION OF MAXIM.
The fact that complainant, in making its own catalogue, copied from those of other concerns, did not debar it from relief on the ground that it did not come into court with clean hands; its right to such relief arising from the relationship between the parties and the fraudulent acts of its employé.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 185–187; Dec. Dig. § 65.*]

In Equity. Suit by the Merchants' Syndicate Catalog Company against the Retailers' Factory Catalog Company, Thomas H. Baskin, A. G. Clune, and Ina Mullane. On final hearing. Decree for complainant.

Zimmerman & Myers, of Chicago, Ill., for complainant.
Adams, Crews, Bobb & Wescott, of Chicago, Ill., for defendants.

SANBORN, District Judge. A bill for fraud and unfair competition was filed July 1, 1912. On September 30, 1912, this court issued a temporary injunction, restraining defendants from using complainant's catalogue in building up defendants' catalogue, using complainant's catalogue in making sales, selling or giving away catalogues made up by copying complainant's catalogue, using certain lists of merchants under contract with complainant, as well as any list or lists of prospective merchants intending to do business with complainant, approaching or interfering with the salesmen of complainant, and the use of a certificate of deposit contract similar to that of complainant. The temporary injunction was later modified, by making certain additions thereto, restraining defendants, among other things, from approaching any of the merchants referred to in said lists, in conducting any competing business.

[1] It appears from the bill and proofs that John Baskerville, president of complainant, adopted a plan of merchandising through local merchants, which was to publish a large general catalogue of merchandise, showing the description and retail prices of commodities. The catalogue was to be furnished to merchants throughout the country, who were under contract with complainant, together with a confidential price list, but without disclosing to the merchants the cost or place of manufacture. The merchant was to sell the goods mentioned in the catalogue to his customers and order the same from complainant, and by it ordered from the factory and shipped directly to the consumer. The contract with the merchant consisted of a certificate of deposit, by which he agreed to pay $100, which was to be returned to him when sales to a certain amount had been made.

The scheme was not original with Baskerville, but was an extension of the Berkley system, so called. Complainant's catalogue was compiled, in part, from Sears, Roebuck & Co.'s catalogue, from cuts and facts furnished by some of the factories interested, and from other

─────────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sources. The complainant corporation was organized in 1910. After the outlay of considerable sums of money by the complainant in getting the plan started, the defendant Baskin was employed to make contracts with factories, and obtain from them the necessary facts from which the catalogue or catalogues were to be prepared. Baskin started work for complainant in September, 1910, continuing until January, 1911, again being employed in June, 1911, and severing his connection with the company April 6, 1912, taking effect April 10, 1912.

The complaint is that the defendant Baskin, while in the employ of complainant as its trusted servant, acquired the information and experience necessary to the carrying on of a successful business similar to that of the complainant, and in the latter part of the year 1911 entered into negotiations with one McCauley for the purpose of organizing a rival business, when the money could be raised, and Baskin could collect sufficient facts and obtain sufficient experience to make the arrangement a feasible one. Baskin had been formerly employed by the Berkley system, which was, however, not so complete or thoroughly organized as that of complainant; that Baskin proceeded to obtain all confidential information from the complainant company, and, through his connection with it as sales manager, whereby he obtained the names of all the factories who were willing to sell goods under the plan in operation, the names of all the merchants under contract with complainant, as well as the names of a large number of merchants who had answered advertisements, and who had under consideration the making of sales contracts with complainant. About three months before Baskin ceased to be in the employment of complainant, he and McCauley formed a South Dakota corporation for the purpose of carrying on a like business. Shortly before Baskin severed his connection with complainant a sufficient amount of money had been raised by McCauley, through the sale of stock in the defendant corporation, to enable that company to begin business. On April 7, 1912, Baskin sent out a form letter to the salesmen of complainant, stating that he had severed his connection with the company and formed one of his own, and proposing to make a contract for the sale of his company's goods with them. It is claimed that the plan was that Baskin should continue in the employment of complainant until he obtained all their factory lines, made acquaintance with all their salesmen, obtained a list of the merchants who were under contract with them, complainant meanwhile paying the expense of all the necessary experiments to make the business a success, and at the proper time, when sufficient money should be raised by Baskin and McCauley, they would then start the new business, substantially upon the good will and outlay of the complainant.

Shortly after the 10th of April, 1912, when Baskin severed his connection with complainant, the defendant company commenced to do business. They had no catalogue, however, and it was necessary for a while to proceed almost entirely upon the basis established by complainant. Salesmen were sent out by the defendant company, who for a while used complainant's catalogue. A certificate of deposit was gotten up, of a different appearance from complainant's, but containing

substantially the same provisions. The business was, however, conducted in the name of the Retailers' Factory Catalogue Company. The complaint is that Baskin thus used the good will, and information of a confidential character, which he had gotten almost wholly through his connection with the complainant, for his own benefit, and to the prejudice of complainant, and against its interest, and that the law does not permit this to be done.

It is claimed by defendants, on the other hand, that the plan pursued by both companies is practically the former Berkley system, that Baskerville practically copied that system in forming his own, that in making up his catalogue he copied very liberally from Sears, Roebuck & Co. and other catalogues, and therefore that his company is in no position to obtain any injunction, or recover any profits realized by the defendant company for doing substantially the same thing as the complainant company had formerly done. Defendants claim that the complainant company does not come into court with clean hands, for the reason that it has thus appropriated the outlay and efforts of other people, and cannot under the circumstances have any cause of action against the defendants. It is substantially admitted by complainant that, if Baskin had never had any connection with the complainant company, defendants' position would be correct, but, inasmuch as he was in the employ of complainant, and obtained substantially all the information necessary to launch his business while in that capacity, the company formed by him has no right to use materials or facts obtained by him in the course of his employment, and for his employer, against the interest and to the prejudice of complainant company.

It is found as a fact, from the testimony and exhibits admitted on the hearing, that the complainant's case is substantially proved. The claims of the complainant as herein stated are true in substance and effect. Baskin and McCauley entered into a combination or conspiracy to obtain the benefit of detailed facts and information which Baskin gained solely through his connection with complainant, and they carried out their scheme by appropriating to themselves everything of value which had been obtained by complainant in the building up of its business, and which had become an exceedingly valuable good will. This the law does not permit them to do without liability, as held by the Circuit Court of Appeals of the Second Circuit in International Register Co. v. Recording Fare Register Co., 151 Fed. 199, 80 C. C. A. 475. Baskin was under legal obligation not to act adversely to the interests of complainant in connection with any of its business, and especially any business with which he had become connected by means of information and relations growing out of said agency. The like rule is held in many other cases, among others, Stevens v. Stiles, 29 R. I. 399, 71 Atl. 802, 20 L. R. A. (N. S.) 933, 17 Ann. Cas. 140, Stone v. Goss, 65 N. J. Eq. 756, 55 Atl. 736, 63 L. R. A. 344, 103 Am. St. Rep. 794, and Westervelt v. National Paper Co., 154 Ind. 673, 57 N. E. 552.

[2] Although it is a fact that Baskerville copied from other catalogues in the preparation of his own, this does not excuse a person in Baskin's situation from appropriating to himself such confidential in-

formation, although a third person might have copied from Basker-ville's catalogue without making himself in any way liable to the com-plainant. Baskin did much more than copy the catalogue prepared by Baskerville. He knew thoroughly all the contract relations existing between the factories listed in that catalogue and the complainant, and, in addition to this, he appropriated to himself lists of merchants under contract with the complainant, lists of prospective merchants with whom a contract might possibly be made, and took over also as much of the good will established by complainant as he could possibly assim-ilate. The rule of unclean hands does not apply to such a case as this. Simmons Med. Co. v. Mansfield Drug Co., 93 Tenn. 84, 23 S. W. 165; Sartor v. Schaden, 125 Iowa, 696, 101 N. W. 511; Stirling Silk Mfg. Co. v. Sterling Silk Co., 59 N. J. Eq. 394, 46 Atl. 199; Medical As-sociation v. Pierce, 203 N. Y. 419, 96 N. E. 738; Johnson v. Seabury, 69 N. J. Eq. 696, 61 Atl. 5.

Any profit gained by the defendant company through the use of complainant's catalogue or confidential information belongs to com-plainant; but how far a permanent injunction should go, in view of the fact that the temporary injunction has now been in force more than nine months, is another question. It would not appear to be nec-essary to continue the injunction much longer. The lists of merchants have been turned over to complainant, and it has had as broad an or-der in respect to the catalogue and agents of complainant as it was en-titled to. It is true defendants' catalogue is copied in part from com-plainant's, but they could lawfully now make one just like it.

The injunction now in force should be continued to July 31, 1913, which will make 10 months, and be dissolved from and after August 1, 1913; and defendants should be decreed to account as prayed.