**BAUSCH & LOMB OPTICAL CO. et al. v. WAHLGREN et al.**

No. 10432.

District Court, N. D. Illinois, E. D.

Nov. 15, 1932.

Winston, Strawn & Shaw, of Chicago, Ill., for plaintiffs.

Oscar G. Wahlgren and B. F. J. O'Dell, both of Chicago, Ill., for defendants.

WILKERSON, District Judge.

The case has been heard on exceptions to the master's report finding that the temporary injunction granted on May 18, 1921, should be made permanent.

The injunction restrained the defendant Roy M. Wahlgren from breaching a contract by which plaintiffs claim he bound himself not to engage, directly or indirectly, for a period of five years from the date of the termination of his employment by the Riggs Optical Company, in the manufacture and sale of optical instruments or apparatus anywhere within the United States and west of a line drawn north and south through the city of Detroit, Mich.

The injunction also restrained the defendants from interfering with the business of plaintiffs by conspiring to publish false, derogatory, vindictive, or scurrilous statements concerning the same; from conspiring with defendants Roy M. Wahlgren and Bradley to induce employees of plaintiffs to quit their employment or to interfere with the employees of plaintiff in the performance of their duties or to create dissatisfaction among the employees of plaintiffs; from making use for any business purpose of lists of the customers of plaintiffs obtained by defendants while employed by either of plaintiffs or from using any such lists or any knowledge obtained therefrom in assisting Roy M. Wahlgren to carry on business in violation of his agreement above mentioned; from attempting to take away the customers of plaintiffs by using information acquired by defendants as a result of their employment by plaintiffs; and from knowingly accepting employment in any business carried on by Roy M. Wahlgren in violation of his agreement with plaintiffs.

The bill sets forth the contracts by which plaintiffs claim defendant Roy M. Wahlgren imposed upon himself the restrictions stated in the injunction as to the business in which he would engage, and charges violation of those restrictions by Wahlgren and conspiracy on the part of himself and the other defendants to violate the restrictions. The bill also charges that apart from the contracts the defendants have conspired to ruin the business of the plaintiffs, and that in furtherance of the conspiracy defendants have issued false statements, interfered with employees, made improper use of trade information, and threatened to continue such acts.

The pleadings and the contracts relied upon are set out fully in the master's report and there is no occasion to repeat them here. The record of the testimony before the master embraces more than 7,000 pages, and the carefully prepared abstract with which the court has been furnished requires more than 2,000 pages.

In view of the earnestness with which the master's report has been assailed, the court has endeavored to make a careful examination of the facts brought out in evidence. The court is of the opinion that the evidence of conspiracy to inflict wrongful injury on the business of the plaintiffs is amply sufficient to sustain those portions of the injunction which do not relate to the alleged

breaches of the restrictive agreements. When all the circumstances are considered in their relation to each other, the proof is convincing that defendants were co-operating in a general scheme devised by defendant Roy M. Wahlgren to destroy the credit, reputation, and business of the plaintiffs. The business in which the plaintiffs were engaged was of such a character and their interests were so interwoven, particularly in view of the contracts here involved, that in this branch of the case it was proper under Equity Rule 37 (28 USCA § 723) for them to join in obtaining relief. The conspiracy shown was directed at both plaintiffs..

■ The power and duty of a court of equity to enjoin attempts to induce breaches of contract of employment, when such attempts are part of a conspiracy wrongfully to injure the business of another, are well established. Some of the cases illustrating this rule are American Malting Co. v. Keitel (C. C. A.) 209 F. 351; Messenger Publishing Co. v. Mokstad, 257 Ill. App. 161; Hooker, Corser & Mitchell Co. v. Hooker, 88 Vt. 335, 92 A. 443. The mere fact that one is engaged in a competing business and wishes to engage workmen for such business is not a legal excuse for enticing away the employees of another. Bloom v. Bohemians, 223 Ill. App. 269. Nor is it necessary that the contract of employment should be for a fixed period. Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461. See, also, London Guaranty & Accident Co. v. Horn, 206 Ill. 493, 69 N. E. 526, 99 Am. St. Rep. 185. The right of plaintiffs here to injunctive relief is strengthened by the showing that the inducement was attempted and sometimes accomplished by spreading false and derogatory statements as to the business of the plaintiffs.

■ The portions of the injunction designed to prevent the wrongful use of trade information and lists of customers to the detriment of the business of plaintiffs are sustained by Stevens & Co. v. Stiles, 29 R. I. 399, 71 A. 802, 20 L. R. A. (N. S.) 933, 17 Ann. Cas. 140; Loven v. People ex rel., 158 Ill. 159, 42 N. E. 82; Witkowsky v. Affeld, 283 Ill. 557, 119 N. E. 630; Merchants' Syndicate Catalog Co. v. Retailers' Factory Catalog Co. (D. C.) 206 F. 545.

■ It is not a valid objection to the injunctional order that some of the acts considered in themselves may be lawful. The evidence clearly shows a conspiracy to injure and destroy the credit, reputation, and business of the plaintiffs. The acts in furtherance of the general scheme take color from it and may be enjoined. Evenson v. Spaulding (C. C. A.) 150 F. 517, 9 L. R. A. (N. S.) 904; Maytag Co. v. Meadows Mfg. Co. (C. C. A.) 35 F.(2d) 403; National Life Insurance Co. v. Myers, 140 Ill. App. 392; Kenderdine v. Rouland, 260 Ill. App. 194.

■ The portions of the injunction directed against false and derogatory statements are proper in view of the inclusion of the element of conspiracy. As a general rule a court of equity will not enjoin the publication of a libel. This rule does not apply to conspiracies to inflict wrongful injury to business when the threatened libel is one of the means chosen for the accomplishment of the purpose. Maytag Co. v. Meadows Mfg. Co., supra; American Malting Co. v. Keitel, supra.

■ Defendants urge against the portions of the injunction covering the restrictive agreement that the Riggs Optical Company is improperly joined as party plaintiff for the reason that it is not a party to the contracts containing the restrictions. The contracts between Bausch & Lomb and Wahlgren were for the purchase of stock from Bausch & Lomb by Wahlgren in the Riggs Company. The restriction against competing with the Riggs Company was a part of the consideration for the agreement by Bausch & Lomb to sell the stock to Wahlgren. The stock for the sale of which the agreement was made was part of a controlling interest in the Riggs Company which Bausch & Lomb had acquired. In the agreement the stock covered by the contract with Wahlgren was pledged to Bausch & Lomb until the purchase price was paid. It is clear that the restrictive agreement was made directly and primarily for the benefit of both Bausch & Lomb and the Riggs Company.

■ The rule is well settled that one for whose benefit a promise is made, though not himself the promisee, may sue in equity for the enforcement of the promise. Princess Amusement Co. v. Wells (C. C. A.) 271 F. 226, 229; Central Electric Co. v. Sprague Electric Co. (C. C. A.) 120 F. 925.

■ Defendants urge that the rule last stated is not applicable because the contracts

here are under seal. It would be a sufficient answer that as the law of the forum controls on that point (Central Electric Co. v. Sprague Electric Co., supra), section 33 of the Practice Act of Illinois abolishes the distinction between contracts under seal (except penal bonds) and those not under seal. Cahill's Stat., ch. 110, pars. 33, 34. However, it has always been the rule in Illinois, in harmony with the modern rule on that subject, that a party for whose benefit a contract has been made may sue thereon, whether the contract be under seal or not. Harts v. Emery, 184 Ill. 560, 56 N. E. 865. See, also, Central Trust Company of New York v. Berwind-White Coal Co. (C. C.) 95 F. 391; Vulcan Iron Works v. Pittsburg-Eastern Co., 144 App. Div. 827, 129 N. Y. S. 676; Pond v. New Rochelle Water Co., 183 N. Y. 334, 76 N. E. 211, 1 L. R. A. (N. S.) 958, 5 Ann. Cas. 504; Lawrence v. Fox, 20 N. Y. 268. Hendrick v. Lindsay, 93 U. S. 143, 144, 23 L. Ed. 855, relied on by counsel for defendants, is to be distinguished on the ground that the rule there stated is limited to contracts requiring an action of debt or covenant.

■ Defendants assail the restrictive provisions of the contracts on the ground that they are against public policy and void. They assert that the validity of the contracts is to be determined by the laws of Illinois. An application of the principles stated by the Supreme Court of Illinois, in the opinion of this court, would not invalidate the restrictive covenants. However, the proposition that the law of Illinois, if it is different from the general principles of commercial law, controls cannot be accepted. The reasonableness of the restrictive covenants presents a question, not of state policy, but of national policy, and of general law. Harrison v. Glucose Sugar Refining Co. (C. C. A.) 116 F. 304, 58 L. R. A. 915; Wark v. Ervin Press Corporation (C. C. A.) 48 F. (2d) 152, 155; Hall Manufacturing Co. v. Western Steel & Iron Co. (C. C. A.) 227 F. 588, L. R. A. 1916C, 620; Carter v. Alling (C. C.) 43 F. 208; Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Oregon Steam Navigation Co. v. Winsor, 20 Wall. 64, 22 L. Ed. 315; National Enameling & Stamping Co. v. Haberman (C. C.) 120 F. 415; Cropper v. Davis (C. C. A.) 243 F. 310.

The law applicable here is summarized by Judge Alschuler in Wark v. Ervin Press Corporation, supra, as follows: "The answer alleges that there was nothing extraordinary or unique about Wark's services, and that he could be replaced without injury to his former employer, and that therefore the negative or restraining covenants of paragraph 6 of the contract are not enforceable. The trend of modern authorities is that such covenants, when reasonably limited as to time and place, and when reasonably calculated to protect the lawful business of the employer, will be enforced, even though the service is not of that unique and special nature as has often been the subject of judicial consideration." (Citing cases.) See, also, Broxham v. Borden's Farm Products Co. of Illinois (C. C. A.) 53 F.(2d) 946, 947.

■ It would serve no useful purpose to review the cases on which defendants rely. It is sufficient to say that without exception they involve facts essentially different from the instant case. Counsel for defendants invokes the rule stated by the Court of Appeals for the Fifth Circuit in Super Maid Cook-Ware Corporation v. Hamil, 50 F.(2d) 830. When read in the light of the facts of the case, the principles there announced do not seem to be essentially different from those stated by the court for our own circuit in the cases to which reference is made above. But if the case in the Fifth Circuit is regarded as laying down a stricter rule against the contracts than that adopted in the Seventh Circuit, it is the duty of this court to follow the decisions of our own circuit. The facts of the instant case satisfy all of the requirements of the rule stated in Super Maid Cook-Ware Corporation v. Hamil, supra. Wahlgren's position with the Riggs Company was such that he was in possession of all of its trade secrets and confidential information, had close contact with its customers, and was in a position to inflict great injury upon it through the organization of a rival business. What he is shown to have actually done is demonstration of a relationship sufficient to sustain the legality of the restrictive covenant.

■ The restrictive covenant is not invalid for the reason that it is found in contracts between Bausch & Lomb and Wahlgren. The proposition urged by counsel for plaintiffs that a contract whereby one who sells part of his stock in a corporation secures as part of the consideration the promise of the buyer, made for the benefit of the corporation, that he will not compete with the corporation whose stock is the subject of the sale, is a valid agreement enforceable in equity, is sound in reason and is amply sustained by authority. Steele v. Drummond,

275 U. S. 199, 48 S. Ct. 53, 72 L. Ed. 238; Princess Amusement Co. v. Wells (C. C. A.) 271 F. 226; In re Wolf Mfg. Industries (C. C. A.) 56 F.(2d) 64; Dater v. Anderson (C. C. A.) 28 F.(2d) 944.

Defendants urge that the restrictive covenant should not be enforced because the contracts of which it is a part are inherently illegal. The alleged illegality relates to the portions in which it was agreed that so far as it was within the control of the parties Wahlgren was to become general manager of the Riggs Company at an annual salary of $35,000. It cannot be overlooked that the attack on the validity of the contracts and the appeal to the court in the name of the sanctity of fiduciary relations is made by one in whose favor the contracts have been partially executed, and who has received and retained large benefits thereunder, for the return of which there is not even a suggestion. Courts of equity listen with caution to the plea of public policy put forward by one who has had the benefit of performance and will not invalidate a contract on such a plea if it is reasonably possible to give it a construction by which its validity is preserved. Twin City Pipe Line Co. v. Harding Glass Co., 283 U. S. 353, 51 S. Ct. 476, 75 L. Ed. 1112; Patterson v. Motter (D. C.) 55 F.(2d) 692. Moreover, it is apparent that the seventh paragraph of the contract, the one here in question, is separable from the rest of the contract and that without it the other provisions of the contract can still be enforced.

It is the opinion of this court that the provisions of the seventh paragraph of the contract do not fall within the ruling in West v. Camden, 135 U. S. 507, 10 S. Ct. 838, 34 L. Ed. 254, and kindred cases. Compare Ziegler v. Lake Street Elevated R. Co. (C. C.) 69 F. 176; Rogers v. Nashville, C. & St. L. R. Co. (C. C. A.) 91 F. 299; Rothchild v. Memphis & C. R. Co. (C. C. A.) 113 F. 476; Mackin v. Nicollet Hotel (C. C. A.) 25 F.(2d) 783; Realty Acceptance Corporation v. Montgomery (C. C. A.) 51 F.(2d) 636.

In the contract in the instant case Bausch & Lomb, majority stockholder in the Riggs Company which had contracted to sell a part of its stock to Wahlgren, desired to retain Wahlgren in the management of the affairs of the Riggs Company during the period within which Wahlgren was to pay for the stock purchased by him. The agreement to retain Wahlgren in the position of manager was not by an officer or director of a corporation, who was charged with a fiduciary duty to all of the stockholders, but by a stockholder which had a perfect right to vote its stock in the way in which, in its opinion, its interests would be advanced. No secrecy, overreaching, private profit, or other fraudulent conduct is suggested. The assertion of invalidity comes, not from the corporation or from a minority stockholder who claims to have been wronged, but from the man himself whom the majority stockholder agreed should be hired. Adopting the language of the court in Realty Acceptance Corporation v. Montgomery, supra, the contract here bears "no more than a surface resemblance" to the contract in West v. Camden.

The attempt to escape the force of the contractual obligations on grounds of ambiguity cannot be sustained. The defense of unclean hands is not supported by the proof.

The exceptions to the master's report are overruled, and the master's report filed April 15, 1932, is affirmed.

The motion of respondents to strike the petition of plaintiffs filed June 18, 1932, for a rule to show cause why respondents should not be punished for contempt, is overruled, and an order will be made in accordance with the prayer of the petition.

Counsel for plaintiffs may draft orders in accordance with the above rulings, and present the same for entry on notice as required by the rules of this court.